**ST. LOUIS, S. F. & T. RY. CO. v. GEER et al.**

(Court of Civil Appeals of Texas. Dallas. June 22, 1912. Rehearing Denied Oct. 12, 1912.)

1. DEATH (§ 31*) — LIABILITY OF MASTER—DEATH.

Where a brakeman, who received fatal injuries from being thrown from the top of a car en route to another state, left a wife and child surviving, his dependent mother had no right of action against the railroad company; the right of action in such case being controlled by the federal Employer's Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), which gives a right of action to the parents for the wrongful death of an employé only when he leaves no wife or child surviving.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 35–46; Dec. Dig. § 31.*]

2. MASTER AND SERVANT (§ 293*)—WRONGFUL DEATH—SUBMISSION OF ISSUES—EVIDENCE.

Where, in an action for the death of a brakeman from being thrown from the top of a car through its being struck by the engine, without warning, there was circumstantial evidence from which the jury might conclude that such striking, without warning, was negligence and the proximate cause of the accident, it was not error to submit to the jury the issue of defendant's failure to give warning, though there was no direct evidence of any causal connection between such failure and the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1161; Dec. Dig. § 293.*]

3. MASTER AND SERVANT (§ 293*)—WRONGFUL DEATH—SUBMISSION OF ISSUES—EVIDENCE.

Where, in an action for the death of a brakeman from being thrown from a car on its being struck a second time by the engine during switching operations, the evidence was conflicting as to whether deceased was warned before the car was struck, it was proper to submit to the jury whether such warning was given.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1161; Dec. Dig. § 293.*]

4. DEATH (§ 104*)—WRONGFUL DEATH — INSTRUCTIONS—MEASURE OF DAMAGES.

In an action by the widow and infant child for an employé's wrongful death, it was not error to charge, on the measure of damages, that by pecuniary aid is meant not only money, but anything that can be valued in money, including, in the case of the child, the reasonable pecuniary value of the nurture, care, and admonition the child would have received from his father, had he lived during its minority; that no allowance could be made for any grief or sorrow, or loss of society, affection, or companionship; and that if the jury found for the plaintiff they should apportion to each the amount he was entitled to receive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 142–148; Dec. Dig. § 104.*]

5. APPEAL AND ERROR (§ 732*)—ASSIGNMENT OF ERROR—SUFFICIENCY.

An assignment complaining that the court erred in overruling defendant's motion for a new trial, upon the ground that the "verdict of the jury is grossly excessive in amount as to all and each of the plaintiffs," being too general, and not in compliance with the rules for briefing, could not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3022–3024; Dec. Dig. § 732.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by Nina M. Geer and others against the St. Louis, San Francisco & Texas Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed in part, and reversed and rendered in part.

Andrews, Ball & Streetman, of Ft. Worth, and Head, Smith, Hare & Head, of Sherman, for appellant. J. C. Wall and Wolfe, Maxey, Wood & Haven, all of Sherman, and Davis & Thomason, of Gainesville, for appellees.

TALBOT, J. E. H. Geer was a switchman in the employ of appellant. He was injured on the night of August 5, 1910, in

appellant's yards at Sherman, in Grayson county, Tex., and died on the following day. At the time of his injury, he was working at night as a switchman. His foreman was W. L. Pelly. Pelly had three helpers, consisting of deceased, Krum, and Combs. The switch engine was operated by Hartley, engineer. On the occasion of his injury, the crew were engaged in switching three bad order cars onto the track known as the "repair track" in the yards, in order that the same could be repaired. The yards in which deceased was working were what is known as "gravity yards," and the method of doing work was this: The switch crew would pick up a train that came into the yards and switch the cars onto the proper tracks to make up trains going out, and place such bad order cars as were found in the train on the track designated as a "repair track," in order that the same might be repaired for their journey. The method of doing this work was that the switches were thrown for the proper tracks, and the cars were given a start by the engine, and by reason of the tracks being downgrade the cars would, after starting, go of their own momentum to the points desired, and on the cars so switched a switchman was placed, for the purpose of controlling the cars by setting the brakes. On the occasion of Geer's injury, the crew were endeavoring to place three bad order cars on track No. 9, which was known as the "repair track." Deceased, acting under instructions of Pelly, as foreman, got upon one of the cars, for the purpose of riding the same into the switch, setting the brakes, and stopping the cars at the proper place on the "repair track." The cars were given a shové, but did not attain sufficient velocity to get to their destination, and it became necessary for the engine to again strike them and accelerate their speed. When the engine was brought against these cars, the jolt, caused by the engine striking the cars, threw Geer from the top of the cars between the cars and on the track, where he was run over and sustained the injuries that caused his death. The cut of cars that deceased was working with at the time of the accident were box car S. F. 29553, an oil tank car C. S. N. O. & P. 190059, and a box car N. Y. C. & St. L. 25049; the first named being the car that deceased was on when last seen before the injury. These cars arrived in the yards at Sherman on the evening of August 5, 1910, and came from the south over appellant's railway, and from other points in Texas. The first car mentioned was destined for Hugo, Okl., and left Sherman for its destination August 8, 1910, and was an empty. The next car was destined for Mounds, Okl., and left Sherman for its destination on August 10, 1910. The next car originated at Morrisville, Tex., was loaded with lumber, and was destined for Oklahoma City, and left Sherman for its destination

August 7, 1910. The deceased left surviving him a wife, Nina M. Geer, and son, E. J. Geer, and a mother, Angeline Geer.

On September 14, 1910, the said Nina M. Geer, as administratrix of the estate of E. H. Geer, deceased, and in her own right as surviving widow of the said E. H. Geer, and E. J. Geer, a minor son of the said E. H. Geer, suing by Nina M. Geer, his mother, as next friend, brought suit in the district court of Grayson county, Tex., against the appellant, St. Louis, San Francisco & Texas Railway Company, for damages suffered by them on account of the death of the said E. H. Geer. The negligence alleged is, in substance, that the employés operating said locomotive and those working with the deceased in doing the switching at the time of his injury were negligent, in that the engine was pushed against said cars with unusual and unnecessary violence; that they were further guilty of negligence, in that it was customary, under those circumstances, that deceased should have been warned that said cars would be struck; and that the employés negligently failed to warn him and advise him of the same in time for him to protect himself against the jar and jolt incident to the engine striking said cars. Said appellees alleged their damages to be $30,000. On September 21, 1910, appellee Angeline Geer instituted suit in the district court of Grayson county against appellant for damages on account of injuries resulting in the death of said E. H. Geer, and alleged that she was a widow and the surviving mother of deceased, and was dependent on him for her support. She alleged substantially the same grounds of negligence as were alleged by Nina M. Geer, and alleged her damages to be $30,000. To both of which suits appellant answered by general demurrer, general denial, pleas of assumed risk and contributory negligence on the part of deceased in general terms. On December 8, 1910, on motion of appellee Angeline Geer, said suits were consolidated, and on December 9, 1910, a trial was had before the court and a jury, and resulted in a verdict and judgment in favor of Angeline Geer for $1,000 and in favor of the plaintiffs Nina M. Geer and E. J. Geer in the sum of $11,000, apportioned $6,000 to Nina M. Geer and $5,000 to E. J. Geer. Appellant presented a motion for a new trial, which was overruled, and it appealed.

[1] The first assignment of error complains of the trial court's refusal to instruct the jury to return a verdict in favor of appellant as against the plaintiff Mrs. Angeline Geer. The contention, in substance, is that, as the evidence shows that the relation of employer and employé existed between the appellant and the deceased, E. H. Geer, at the time the injuries causing his death were inflicted, and that the appellant was a common carrier by railroad, and the cars the deceased was assisting to place on the "repair track" were

destined to points in the state of Oklahoma, the appellant and the deceased were therefore engaged in interstate commerce, and the liability, if any, of the appellant for damages resulting from the death of the deceased is governed by the provisions of the federal Employer's Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]); and that under said act a cause of action does not arise to the parents of such employé where, as in this case, such employé has a surviving wife and child. We are of opinion that this contention must be sustained.

The question here presented is not one of pleading, and has not heretofore arisen in any case decided by this court. The federal Employer's Liability Act provides that a common carrier by railroad, while engaging in commerce between any of the several states, etc., shall be liable in damages to any person suffering injury while he is employed in such commerce, or, in case of the death of such employé, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé, and, if none, then of such employé's parents, and, if none, then to the next of kin dependent upon such employé, for such injury or death resulting, in whole or in part, from the negligence of any of the officers, agents, or employés of such carrier. The statute of this state provides that every corporation, receiver, or other person operating any railroad in this state shall be liable in damages to any person suffering injury while he is employed by such carrier operating such railroad, or, in case of the death of such employé, to his or her personal representative, for the benefit of the surviving widow and children, or husband and children, and mother and father, of the deceased, and, if none, then of the next of kin dependent upon such employé, for such injury or death resulting, in whole or in part, from the negligence of the officers, agents, or employés of such carrier, etc. Thus it will be seen that by the federal statute the cause of action is given, in case of the death of the employé, to the personal representative of the deceased, for the benefit of the surviving widow or husband and children of the employé, if there be such persons, to the exclusion of the other beneficiaries named therein; whilst our state statute gives the right of action to the personal representative of the deceased, for the benefit of the surviving widow or husband and children, and for the benefit of the mother and father of the employé. In other words, under the federal statute, if there be persons of the first class mentioned therein, all the persons of the second and third class are excluded, and no cause of action is given for their benefit for any damages which may have resulted to them on account of the death of the employé; whereas, under the state statute, the father and mother of the employé, as well as the widow and children, or husband and children, are named as beneficiaries for whom the suit may be brought. In this particular these statutes are in conflict, and to the federal statute the state statute must yield.

It has been held that Congress did not exceed its power to regulate the relations of interstate railway carriers and their employés engaged in interstate commerce in the enactment of the Employer's Liability Act; and that the laws of the several states, in so far as they cover the same field, were superseded thereby. Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327. In Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508, which is quoted with approval in the case of Mondou v. Railway Co., supra, it is said: "The grant of power to Congress, in the Constitution, to regulate commerce with foreign nations and among the several states, it is conceded, is paramount over all legislative powers which, in consequence of not having been granted to Congress, are reserved to the states. It follows that any legislation of a state, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce must give way before the supremacy of the national authority." That the enforcement of rights, however, arising under the act of Congress in question "cannot be regarded as impliedly restricted to the federal courts, in view of the concurrent jurisdiction provision of the judiciary act of August 13, 1888 (25 Stat. at L. 433, c. 866 [U. S. Comp. St. 1901, p. 508]), § 1, and of the amendment made by the act of April 5, 1910 (36 Stat. at L. 291, c. 143 [U. S. Comp. St. Supp. 1911, p. 1324]) to the original employer's liability act," but that such rights may be enforced, as of right, in the courts of the several states, "when their jurisdiction, as prescribed by local laws, is adequate to the occasion," is affirmed by the case of Mondou v. Railway Co., cited above. But to determine the liability of the carrier and to whom the right of action is given we must look to the provisions of the federal Employer's Liability Act; for only such rights as are given by that act may be enforced in the state court, in a suit necessarily based upon it. Consulting that act, we find, as has been seen, that in case the employé, on account of whose death the suit is brought, left surviving him a widow and child his parents have no cause of action for any damages they may have suffered by reason of his death. It follows that Mrs. Angeline Geer was not entitled to recover, and that the judgment as to her must be reversed. The plaintiff Mrs. Nina M. Geer sued in her representative capacity, and her right to maintain the suit is not questioned.

[2, 3] Appellant's third assignment of error complains of the fifth paragraph of the court's charge to the jury, upon the grounds

(1) that the court erred in submitting to the jury the issue of the failure of the coemployés of deceased to warn him at the time that the engine and cars were moved against the cars on which deceased was riding, because the evidence does not show any causal connection between the failure to warn and the accident and injury that caused the death of deceased; (2) because the undisputed evidence shows that deceased was warned before the engine and cars collided with the cars on which deceased was riding just before the accident, and the court was not authorized to submit that issue to the jury. The charge was not error for either of the reasons urged. The evidence was sufficient to warrant the submission of the issues embraced in the court's charge. It was shown that there were two cars between the car on which the deceased was and the point where the cut was made. After the accident he was found lying alongside of the track, according to the testimony of the foreman, about two car lengths from the point where the cut was made. Combs says that just before and just after the cut was made he saw the bulk of deceased's body standing on the north end of the third, or last, car, near where the brake would be, and at the time of the collision of the cars he saw deceased's lantern "turn a flip" from the top of this car. The evidence further shows that it was customary to warn a person situated as deceased was of the fact that they were going to hit the cars again, because if he was not warned he would not protect himself and would be liable to be thrown off. That "causal connection" cannot be presumed may be conceded; but that it is a fact which may be proved by circumstances, like any other fact, cannot be denied. There was abundant evidence from which the jury might conclude that the act of striking the cars the second time without warning the deceased was negligence, and that such negligence was the proximate cause of his injuries an death.

As to the second proposition, it is sufficient to say that the evidence was conflicting as to whether or not any notice was given the deceased at the time of or before the cars were struck the second time, and that therefore it was proper for the court to submit such fact for the determination of the jury. The witness Combs testified: "I halloaed at Mr. Geer, and about the time I halloaed at him those cars came together. I halloaed at him just as quick as I closed the knuckle and got out from between them. I don't think he would have had time to have braced himself then before the cars struck, even if he had heard me." Pelly testified: "I did not give him any notice that I was going to strike this second time. Nobody gave him any notice there that I know of." It would seem that the notice or

warning given by Combs was given too late to accomplish the purpose for which it was intended, and therefore amounted to no notice. But, if it be admitted that Comb's testimony was sufficient to show that he had complied with the rule or custom by giving notice of the fact that the cars were to be struck the second time, the testimony of the foreman, Pelly, who was present, that he gave no notice to the deceased and heard no notice given him by any one else, raised a question of fact, not only as to whether the notice was given in time, but whether any was given at all. It was therefore proper for the court to submit the issue to the jury.

What has been said disposes of several assignments of error bearing upon the question raised by the third assignment adversely to appellant's contention, and such assignments need not be further noticed.

[4] The eleventh assignment complains of the court's charge on the measure of damages. The charge reads as follows: "By pecuniary aid is meant not only money, but everything that can be valued in money, and, in the case of the infant child, E. J. Geer, it includes the reasonable pecuniary value of the nurture, care, and admonition, if any, you believe from the evidence said child would have received from the said E. H. Geer, deceased, had he lived during its minority. If you find for plaintiffs, or any of them, you will not allow anything for any grief or sorrow on account of the death of the said E. H. Geer, or the loss of his society, affection, or companionship. If you should find for plaintiffs or any of them, then you will apportion the amount so found among them in such sum as you may determine each is entitled to receive." We think there is no material error in this charge. Similar charges in almost the identical language of the charge under consideration have been approved in numerous cases by this and other appellate courts of this state.

[5] The assignment complaining that the court erred in overruling defendant's motion for a new trial, upon the ground that "the verdict of the jury is grossly excessive in amount as to all and each of the plaintiffs," is too general to be considered. Similar assignments have been passed upon by this court recently and held not to be in compliance with the rules prescribed for briefing cases, and therefore not entitled to consideration. Railway Co. v. Matlock, 141 S. W. 1067; Railway Co. v. Goodrich, 149 S. W. 1176, not yet officially published. See, also, City of Galveston v. Devlin, 84 Tex. 319, 19 S. W. 395; Railway Co. v. McVey, 81 S. W. 991.

Assignments, not discussed, have been carefully considered, and because we are of opinion that they disclose no reversible error they are overruled.

The verdict of the jury in favor of the

plaintiffs Nina M. Geer and E. J. Geer is supported by the evidence, and the judgment of the district court as to them is affirmed. But the judgment of that court as to Angeline Geer, for the reason above given, is reversed, and judgment as to her is here rendered for appellant.

Affirmed in part, and reversed and rendered in part.