# Richmond.

## Virginian Railway Co. v. Bell.

### January 13, 1916.

### Absent, Cardwell, J.

1. Appeal and Error—*Impossible Occurrence—Improbability.*—While it may be very improbable that a plaintiff was injured in the manner and under the circumstances narrated by him, yet if the occurrence as narrated was not impossible, as in the case at bar, the case does not come within the rule that courts are not obliged to "accept as true what in the nature of things could not have occurred in the manner and under the circumstances narrated."

2. Juries and Jurors—*Weight and Credit of Testimony.*—If there is sufficient evidence to go to the jury, it is the province of the jury to determine its weight and the credibility of the witnesses.

3. Appeal and Error—*Res Judicata—Law of Case—Judgments.*—Where there have been two trials of a case, and the evidence was substantially the same on both, the rulings of this court on a writ of error to the first judgment become the law of the case.

4. Witnesses—*Experts—Hypothetical Questions—Assuming Facts Not Proved.*—In a hypothetical question to an expert witness, it is error to assume as a fact that which there is no evidence to prove.

5. Witnesses—*Who Are Experts—Physicians.*—A physician may give his opinion as to the force necessary to cause a fracture of the bones in the human back, but not as to how violent would be the blow from a car door of a given size and weight, upon the application of the air brakes on a train running at a given rate of speed, unless he is also an expert on dynamics.

6. Appeal and Error—*Opinion of Nonexpert.*—It is error, and, for all this court can say, prejudicial error, to permit a purely conjectural nonexpert expression of opinion on a pivotal point in a case to go to the jury.

7. Evidence—*X-Ray    Photographs—Explanations—Contradictions—Comparison of Normal with Abnormal Conditions.*—Where the plaintiff claimed that the bones of his neck were fractured by the negligent injury inflicted on him by the defendant, it was entirely proper to permit him to offer in evidence X-ray pictures of his neck showing the fracture and to have them explained by an expert, but, after this

was done, it was error to refuse to permit the defendant to introduce in evidence an X-ray picture of a man's neck in a normal condition and to show by experts that the pictures introduced by the plaintiff did not support the interpretation of the plaintiff's expert testimony. This is especially true where the defendant's expert testifies that with the picture of the normal neck he could, and without it he could not, demonstrate that the pictures introduced by the plaintiff showed no fracture.

Error to a judgment of the Circuit Court of Montgomery county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Hall & Woods, G. A. Wingfield* and *Roop & Phlegar,* for the plaintiff in error.

*A. P. Staples, Jr.,* and *A. B. Hunt,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This case has been tried twice. On the first trial there was a judgment for the plaintiff, O. C. Bell, which was reversed by this court in accordance with an opinion reported in *Virginian R. Co.* v. *Bell,* 115 Va. 429, 79 S. E. 396. On the second trial there was again a judgment for the plaintiff, and to that judgment this writ of error was awarded.

The main facts in the case sufficiently appear from the former opinion. It will be sufficient here to state that the plaintiff was a railway mail clerk and claims to have been struck and injured by a sliding door to the car in which he was at work; and that the principal act of negligence relied upon by him was the alleged failure of the defendant company to provide a reasonably safe hook or fastener to hold the door open when an exchange of mail was to be made.

1. The first assignment of error is based upon the action of the court in refusing to set aside the verdict of the jury as

contrary to the law and the evidence. In support of this assignment it is claimed that the plaintiff's account of the happening of the accident is contrary to known physical laws and could not have been true.

We do not think the case can be controlled by the decision of this court in C. & O. Ry. Co. v. Anderson, 93 Va. 650, 655, 25 S. E. 947, and other similar cases cited by counsel for the defendant company. It must be conceded that there was much in the evidence and in the physical surroundings and situation of the plaintiff to discredit his narrative, but we are unable to say that he might not have assumed the unnatural position which he claims to have occupied at the moment of the alleged injury, or that the unusual combination of circumstances by which he claims to have been hurt did not take place as detailed by him. If the door could not have injured him in any other way than by striking him on the neck in the manner claimed in this case, then it might perhaps be successfully contended that the injury was so improbable that the failure to provide against it could not be ascribed to the defendant as an act of negligence. But it is clear that the door, in the absence of a hook, was liable to be thrown shut by sudden stops of the train, and, while it seems improbable that it would ever strike a mail clerk on the neck just as the plaintiff claims, it is not improbable that it might strike his arm or shoulder or some other part of his body. In other words, there was evidence upon which the jury might have found that the door without the hook was dangerous, and the fact that the alleged injury itself was different in character from that which might have been expected is not sufficient to defeat the recovery, the evidence not being such as to enable us to say that its occurrence was impossible. As was said by Judge Cardwell, in C. & O. Ry. Co. v. Anderson, supra, the rule of the demurrer to evidence, which applies in this case, "may, and often does, require us to accept as true that which is capable of proof, though the preponderance of evidence be ever so great against it;" and

.we do not think the case in hand comes within the qualification very properly applied in the opinion just cited, to the effect that the rule "cannot compel us to accept as true what in the nature of things could not have occurred in the manner and under the circumstances narrated." See *Smith* v. *C. R. I. & P. Ry. Co.,* 82 Kan. 136, 107 Pac. 635, 28 L. R. A. (N. S.) 1255; *Wichita Ice Co.* v. *Shepherd,* 82 Kan. 509, 108 Pac. 819, 28 L. R. A. (N. S.) 648; *Dupris* v. *Valley Traction Co.* 146 Mich. 151, 109 N. W. 413; 1 Jones on Evidence (1913), sec. 129, p. 626.

It is further urged in support of the contention that the evidence did not warrant the verdict, that there is no reasonable probability that the plaintiff would have used the hook if it had been on the door, and, furthermore, that he was guilty of contributory negligence in not holding the door open with his hand or foot. The counsel for the defendant company have presented the argument upon these propositions very forcibly, but we cannot consider the weight of the evidence or the credibility of the witnesses, and we are of opinion that both as to the probable use of the hook, and as to the contributory negligence of the plaintiff, there was enough in the evidence to carry these questions to the jury. Moreover, it was held by this court at the former hearing of this case (115 Va. 429, 79 S. E. 396, Ann. Cas. 1915A, 804) that both were proper questions for the jury. The evidence on the second trial was not so substantially different from what it was on the former trial as to make a new case upon these two questions, and the former decision thereon must be accepted as the law of the case. *Virginian Railway Co.* v. *Bell,* 115 Va. 435 and 437, 79 S. E. 396, Ann. Cas. 1915A, 804; *Rosenbaum* v. *Seddon,* 94 Va. 575, 579, 27 S. E. 425; *Carper* v. *N. & W. Ry. Co.,* 95 Va. 43, 45, 27 S. E. 813; 2 R. C. L., sec. 191, p. 227.

It follows from what has been said that the first assignment of error must be overruled.

2. The witness, Dr. E. C. Ambler, was permitted, over the

objection of the defendant company, to say that, in his opinion, considering the size, travel and adjustment of the door, the rate of speed of the train, and its alleged sudden stop, and assuming that one side of plaintiff's neck was against the door jamb, the blow which the plaintiff might thus receive from the door coming shut on his neck would be sufficient to fracture the transverse process of the third cervical vertebra. To appreciate the possible consequence of this testimony, it must be borne in mind that one of the main issues before the jury was whether the plaintiff could have received, under the circumstances and in the manner claimed by him, a blow sufficient to cause the facture mentioned in Doctor Ambler's answer. Much of the evidence centered around this question. Proof was introduced to show the size of the door, how it was hung, and how far it could travel or slide; also as to the speed of the train and how suddenly it was or could have been stopped or checked by the application of air to the brakes; and as to the force of the blow necessary to break the transverse process of the plaintiff's third cervical vertebra.

The question under consideration was improper as a hypothetical question, because it assumed that the plaintiff's neck was against the door jamb when there was no proof of that fact. Moreover, it was not a sudden stop, but only a more or less sudden reduction of the speed of the train, which is claimed to have caused the injury, and the question was inaccurate and misleading in this respect. It was further improper because the only matter of expert knowledge upon which the witness could properly express an opinion was as to the force necessary to cause the fracture, which is very different from the question as to how violent would be the blow from a door of given size and weight upon the application of air brakes on a train running at a given rate of speed. As a physician, Doctor Ambler could properly express an opinion in answer to the former but not the latter question, unless he was an expert on dynamics as well as on anatomy and surgery. He testified

that he had no personal experience or knowledge whatever in regard to such doors, and his evidence on the point, taken as a whole, shows clearly that he was not competent to express any expert opinion on the subject. It was for the jury to determine, under the facts proved, whether the fracture could have been caused in that way; and this being one of the pivotal points in the case, it was error, and for all that we can say, prejudicial error, to permit this purely conjectural nonexpert expression of opinion to go to the jury. *Va.-Car. Chem. Co.* v. *Knight,* 106 Va. 674, 677, 56 S. E. 725; *Atlantic Coast Line* v. *Caple,* 110 Va. 514, 519, 66 S. E. 855; *Clinchfield Coal Co.* v. *Wheeler,* 108 Va. 448, 452, 62 S. E. 269.

In *McCue's Case,* 103 Va. 870, 995, 49 S. E. 623, it was held not to be error to permit a physician to testify as to the effects of a blow with a sand bag, and that ruling is cited by counsel for plaintiff here to sustain the admissibility of Doctor Ambler's testimony. The distinction is manifest. In passing upon the point in the *McCue Case* Judge Keith said: "It hardly requires the learning or experience of a practitioner of medicine to know that if a man was struck by a sand bag a sufficient blow to render him unconscious there would be at least some slight discoloration or external mark or after effect consequent upon the blow." In other words, the opinion expressed by the physician in that case was upon a matter of common knowledge and observation, and such an expression of opinion as is usually held to be harmless error. See *Lane Bros.* v. *Bauserman,* 103 Va. 146, 155, 48 S. E. 857, 106 Ann. St. Rep. 872.

In the case at bar, the elements involved in determining the force of the blow were not only not matters of common knowledge and experience, but matters with which the witness said he was unfamiliar, and as to which, in the main, there was a sharp contention. The objection to the question and answer was earnestly pressed, and the incompetency of the witness to speak upon the subject was clearly brought out in the trial court, and the objection should have been sustained.

3.   We are of opinion that the court further erred in refusing to permit Doctor Gray, an eminent X-ray specialist of large experience, to exhibit to the jury the X-ray picture taken by him showing a man's neck in normal condition.   The plaintiff had produced in evidence two X-ray plates of the plaintiff's neck, taken by Doctor Brady, a physician of high professional standing, but of limited experience as an X-ray specialist. These plates would doubtless have been meaningless to the jury without explanation, but as explained and interpreted by Doctor Brady they showed a fracture, and, like Doctor Ambler's answer above discussed, they went to the very heart of the case upon the question of extent of damage.   If Doctor Brady's interpretation of these pictures was correct, they were decisive of the vital and controverted question as to whether certain bones in the plaintiff's neck were broken.   The defendant company contends that the plaintiff could not have received a sufficiently hard blow from the door to cause any fracture, and that he did not in fact have a fracture as claimed by him.   His attending physician did not suspect one until after these X-ray pictures of his neck were taken, and were said by Doctor Brady to show that a fracture had been sustained.   Doctor Gray testified that the pictures did not support Doctor Brady's interpretation and stated that he could demonstrate that fact from the pictures themselves, by showing to the jury a picture which he had taken of a man's neck in a normal condition.   It is claimed for the plaintiff that it was proper to exclude the latter picture because to permit a comparison of the plaintiff's neck with other necks would lead to confusion and irrelevancy.   It is difficult to see how this contention can be maintained.   The very relevancy and probative value of the photographs of the plaintiff's neck depend, as it seems to us, upon the correctness of a presumption that as a rule and until the contrary appears every mans' neck is normal, and that the general form and structure of every human neck is the same.   Otherwise, Doctor Brady's pictures, which are offered to show an abnormal condition, prove

nothing.  So too as to the skeleton which the plaintiff introduced to show, by way of illustration and comparison, all the bones involved when in normal condition, and to give the jury an idea of their general formation and structure.  We think it was clearly proper to admit the skeleton to show a normal neck in contrast with the abnormal one which it was claimed Doctor Brady's picture showed, and that upon the same considerations it was improper to exclude the X-ray plates offered by Doctor Gray which he said would enable him to demonstrate that Doctor Brady's pictures did not disclose any fracture.  The plaintiff's case and the result depend much upon the true interpretation of the latter pictures.  The X-ray process is comparatively new, and is more or less occult, certainly to the lay mind. We are of opinion that the defendant was entitled to have Doctor Gray interpret the pictures to the jury in the light of the one which he himself had made of a normal neck, especially in view of his statement that with his picture he could, and without it he could not, demonstrate that the pictures already introduced showed no fracture.  The plaintiff was properly given a free hand in developing the proof of his alleged injuries by means of the X-ray pictures and an expert explanation of them; and similar freedom should have been accorded the defendant  in testing before the jury the correctness of that explanation.

There were other assignments of error, but we regard them as subordinate and not such as to require discussion.

For the errors pointed out, the judgment will be reversed, the verdict set aside, and the same remanded for a new trial.

*Reversed.*