# Wytheville.

## VIRGINIA RAILWAY AND POWER COMPANY V. BAILEY.

### June 13, 1918.

### Absent, Burks, J.

1. APPEAL AND ERROR—*Evidence Construed as Upon Demurrer to Evidence—Natural Laws.*—The statutory rule (section 3484, Code of 1904), under which the Supreme Court of Appeals must consider the evidence when certified, cannot compel that court to accept as true what in the nature of things could not have occurred in the manner and under the circumstances narrated.

2. APPEAL AND ERROR—*New Trial—Carriers of Passengers—Injury to Passenger—Street Railways—Natural Laws.*—In an action against a street railway company to recover damages for injuries to a passenger alleged to have been caused by the starting of the car while the plaintiff was in the act of alighting therefrom, the case turned upon the question of whether the testimony of the plaintiff was of sufficient probative value to support the verdict of the jury in finding that the car was again started after it stopped, and thus threw the plaintiff therefrom as she was in the act of alighting. It was not alleged that the plaintiff was thrown from the car by any act of negligence of the defendant in stopping the car. The plaintiff's testimony was fatally inconsistent with itself and with natural laws in its statement that she was thrown from the car by its starting forward after it had stopped, and yet that she was thrown "kind of forward." The physical fact is, in the absence of explanation not furnished by the evidence, that it was physically impossible for the plaintiff to have been thrown *forward* from the car by its *forward* jerk or movement. By such a movement of the car—by its starting after it had stopped—she would, in her position, so far as shown by her own testimony, have been thrown *backward* instead of "kind of forward." And the stopping of the car, as the plaintiff stepped down on the running-board (to use the plaintiff's language) "the second the car stopped, just at the time it stopped * * * and as I (she) was in the act of taking this left foot down * * *" would, according to natural laws, have jerked and thrown her "kind of forward"—as she in fact fell, as she testified.

*Held:* That the plaintiff's own testimony, therefore, when considered in the light of the known operation of natural laws, shows that she was thrown by the stopping and not by the starting of the car.

3.  CARRIERS OF PASSENGERS—*Street Railways—Duty to Give Reasonable Time for Passenger to Alight.*—If a passenger is thrown from a car and injured while in the act of alighting by the starting of the car after it has stopped, the carrier is liable for the injuries sustained by the passenger, whether the movement of the car in starting is violent or not, is immaterial. It being unexpected is sufficient to charge the carrier, it being its duty to give reasonable time for the passenger to alight after having stopped the car.

Error to a judgment of the Hustings Court, Part II, of city of Richmond, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

This is an action of trespass on the case by the defendant in error, plaintiff in the court below (hereinafter designated plaintiff), against the plaintiff in error (hereinafter designated defendant) for damages for injuries occasioned the plaintiff by a fall in alighting from a street car, badly spraining an ankle, etc.

There was a trial by jury; a verdict and judgment in accordance therewith in favor of the plaintiff, and the defendant brings error.

## THE MATERIAL FACTS.

There is no conflict in the evidence as to the following material facts in the case, namely: On signal of the plaintiff for the car to stop, it was brought to a stop at a usual stopping place with the front of the car about on line with the near building and inner sidewalk line of a street intersecting with the street on which the car was moving. The car contained the plaintiff and four other passengers, and also the motorman and conductor of the car. The plaintiff

testified as the only witness in her own behalf. The conductor, motorman and three of the other four passengers testified as witnesses in behalf of the defendant. The failure of either side to call the fourth passenger as a witness is not accounted for. The car aforesaid was an open, summer car, going south, about twenty feet in length, of the usual construction, with handhole upon the upright standards at the ends of the seats above the running-board, and a running-board on the side for use of passengers in alighting or boarding the car. The plaintiff, just preceding the accident, was seated about midway of the car. After the plaintiff had given the stop signal, when the car was about midway of the block on which the stop was made, she slided on her seat out to the west end of it, on her right hand side as she faced the way the car was moving, and, before the car stopped, she arose, and with her left hand upon the handhold at that end of her seat, and with her gloves in her right hand, prepared to alight from the car as it approached the usual stopping place near by. She was thrown from the car to the pavement, not while she was stepping from the running-board to the pavement, but while she was in the act of stepping from the platform of the car, where she had arisen from her seat, to the running-board of the car. She was thrown from the running-board at the moment she placed her right foot upon it and was in the act of taking her left foot down upon it. After the plaintiff fell upon the pavement the car moved about ten feet. She was thrown from the running-board of the car either by a starting of the car after it had stopped, or by its stopping while she was in the act of stepping upon the running-board aforesaid. In either case there is no evidence that such movement or cessation of movement of the car was violent or constituted any negligence on the part of the defendant, so far as the character of that movement is concerned. The time of such movement or

cessation of movement, in relation to the stop, whether after the stop or as constituting the stop, is the pivotal fact in issue. . Upon this narrow but vital point it is claimed by the plaintiff that the evidence is conflicting.

## THE CONFLICT IN THE TESTIMONY.

The plaintiff, on the point in question, testified on her examination in chief, as follows:

"Q. Please tell the jury what happened before and at the time of your accident, how it happened, in your own way?

"A. Well, I boarded the car at 2:35, and I gave the signal after leaving Hanover avenue, signaled with my left hand. I slid myself over to this side of the car (indicating). I stood up before the car stopped. The second the car stopped, just the time it stopped, I stepped down, and, as I was in the act of taking this left foot down, the car jerked, throwing me.

"Q. Before you stepped down the car then had stopped and was standing still?

"A. It stopped.

"Q. Did you take hold of any part of the car?

"A. Yes, I took hold of the handle of the car, I guess you might call it, with my left hand.

"Q. You took hold of that before you stepped down?

"A. Yes, sir.

"Q. At the time the car started, then, as you recollect it, the car started forward, and you had your right foot—

"A. I stepped down with my right foot.

"Q. On the running board?

"A. Yes, sir.

"Q. Your left foot up?

"A. Yes, sir.

"Q. Did you have anything in your hands?

"A. I had one pair of gloves in my right hand.

"Q. How were you thrown?

"A. Well, *when the car jerked, I was thrown* this way (indicating), *kind of forward,* and it took my feet from under me, and I fell on my back with my left foot under me." (Italics supplied.)

On cross-examination, the plaintiff made practically the same statement, except in somewhat more detail, showing more distinctly that she was stepping on the running-board and not from it to the pavement when she was thrown, and that she was "twisted around" as she fell, and in that way fell on her back. Such statement was as follows:

"Q. Now I wish you would describe to the jury again just how you got off that car. I didn't understand it. Just what did you do as you approached Grove avenue and Robinson street?

"A. I rang the bell with my left hand after leaving Hanover avenue. I slided myself right over to this side of the car. I stood up before the car stopped. I caught hold of this running part of the car on the handle with my left hand.

"Q. You had some gloves in your right hand?

"A. I had some gloves in my hand.

"Q. Then, what happened?

"A. I stood there just for a second before the car stopped. The *second the car stopped,* or *just as soon* as the car stopped, I stepped down with my right foot.

"Q. To the ground you mean?

"A. To the running board.

"Q. With your right foot?

"A. Yes.

"Q. Then how did you get to the ground?

"A. I was thrown to the ground.

"Q. So you never deliberately stepped to the ground?

"A. No. I never deliberately stepped to the ground. I stepped down. As I was trying to take this foot down, the car jerked.

"Q. You had just stepped with your right foot to the running board from the floor of the car, and your left foot was still on the floor of the car?

· "A. I was taking my left foot down.

"Q. When you fell, is that right?

"A. *As soon as I stepped down with my right foot,* I was in the act of taking my left foot down: *before I got my left foot down, the car jerked, throwing me kind of forward,* or I went just that way. (Indicating.) And, as it took my feet from under me, I fell on my back; I was kind of twisted around; I fell on my left foot.

"Q. Do you mean to say you were made unconscious, Miss Bailey?

"A. The shock was so great to me and I was so nervous and excited, that I just did not recall anything that happened.

"Q. You are positive that the moment that the car stopped you stepped down with your right foot from the platform to the running board?

"A. The minute—the second that it stopped. It had stopped." (Italics supplied.)

The testimony of all of the witnesses for the defendant concur to the effect, in substance, that there was but one stop of the car in the locality in question, and that was at the regular stopping place aforesaid; and that the plaintiff was thrown from the car by its stopping while she was in the act of stepping from the platform where she stood to the running-board, just at the time the car stopped. That there was no jerk of the car, except that due to such cessation of movement; that such cessation of movement was not violent or unusual, but the contrary; and one of the passengers on the car, who sat on the west end seat immediately · behind the plaintiff as she was getting off the car, testified (as a witness for defendant) that plaintiff, as she stepped on the running-board, "let go; as she let go, I grabbed at

her to try to catch her, but she was too far gone. Q. You grabbed at her? A. Yes, sir, because I saw she was going to fall. The car had not come to a stop. Q. You didn't catch her though? A. No, sir, I missed her entirely."

*E. Randolph Williams, H. W. Anderson, A. B. Guigon* and *T. J. Moore,* for the plaintiff in error.

*O'Flaherty & O'Flaherty,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the opinion of the court.

In view of the character of the evidence on the pivotal and only point in the case on which it is contended by plaintiff that there is a conflict of evidence, we find it necessary to consider or pass upon only one of the assignments of error, and that is that there was error in the action of the trial court in refusing to set aside the verdict and grant a new trial, on the ground that the verdict was without evidence to support it.

We are of opinion that this assignment of error is well taken.

The cause of action alleged in the declaration is the starting of the car while the plaintiff was in the act of alighting therefrom, and the consequent injuries to the plaintiff. It is not alleged that the plaintiff was thrown from the car by any act of negligence of the defendant in the stopping of the car; and it was practically admitted in argument that the facts of the case were not such that the plaintiff could have amended her declaration to so charge and have recovered because of negligence of the defendant in the stopping of the car.

The case turns upon the question whether the testimony of the plaintiff was of sufficient probative value to support

the verdict of the jury in finding that the car was again started after it stopped, and thus threw the plaintiff therefrom as she was in the act of alighting.

Of course, if the latter were the fact, whether the movement of the car in starting was violent or not, would have been immaterial. It being unexpected would have been sufficient, since it was the duty of the defendant to have given a reasonable time for its passenger or passengers to alight before starting it again after receiving the signal to stop, and after having stopped the car.

But the plaintiff's testimony is fatally inconsistent with itself and with natural laws in its statement that she was thrown from the car by its starting forward after it had stopped, and yet that she was thrown "kind of forward." The physical fact is, in the absence of explanation not furnished by the evidence in this case, that it was physically impossible for the plaintiff to have been thrown *forward* from the car by its forward jerk or movement. By such a movement of the car—by its starting after it had stopped— she would, in her position, so far as shown by her own testimony, have been thrown *backward* instead of "kind of forward." And the stopping of the car, as the plaintiff stepped down on the running-board (to use the plaintiff's language) "the second the car stopped, just at the time it stopped * * * and as I (she) was in the act of taking this left foot down * * *" would, according to natural laws, have jerked and thrown her "kind of forward"—as she in fact fell, as she testified. It is true that she testified "it took my feet from under me and I fell on my back." But she explained in her statement on cross-examination that she fell on her back because she was "kind of twisted around." Hence, she did not testify that she was thrown "backward" by the movement of the car forward, as it is argued for plaintiff. And she did not testify that her feet were carried forward from under her, in advance of her body, from which

33

the inference could follow that her body was thrown backward by the movement of the car, as must have been true according to natural laws from her own narrative of the occurrence, if she had been thrown by a starting and not by a stopping of the car. On the contrary, her testimony that "When the car jerked, I was thrown this way (indicating), kind of forward," is directly opposed to the inference that her feet were carried forward, and her body thrown backward, since we knew that if an object a person is standing upon is at rest and it is moved, the tendency is to carry the feet forward and to throw the body of the person backward, and never forward, as the plaintiff testified she was thrown. She could not have been thrown forward by the starting of the car. The plaintiff's own testimony, therefore, when considered in the light of the known operation of natural laws, shows that she was thrown by the stopping and not by the starting of the car. No other inference could be drawn from her testimony as true and in accord with natural laws.

It is well established that the statutory rule (section 3484, Code of Virginia), under which we must consider the evidence in the case before us, "cannot compel us to accept as true what in the nature of things could not have occurred in the manner and under the circumstances narrated." *N. & W. Ry. Co.* v. *Strickler,* 118 Va. 153, 155, 86 S. E. 824, and *Virginian Ry. Co.* v. *Bell,* 113 Va. 492, 495, 87 S. E. 570, and authorities cited in these cases.

We are of opinion, therefore, that there is no evidence of probative value in the instant case that the plaintiff was thrown, as alleged, by the starting of the car while she was alighting therefrom; that the verdict of the jury is without evidence of sufficient probative value to support it on the pivotal question of fact aforesaid; and, hence, it must be set aside.

We should add that we do not mean to impute to the plain-

tiff an intentional departure from the truth.    To use, in part, her own language, it is evident from her own testimony that, "the shock was so great" and she was "so nervous and excited" that she "just did not recall" precisely how the accident "happened."    Indeed, it is manifest from her own testimony that her statement that the car "had stopped" when she stepped on the running-board is coupled with the statement that her act of stepping on the running-board occurred "the minute—the second it (the car) stopped;" so that it is apparent that when she said the car had stopped before she was thrown, she was testifying to an opinion of hers afterwards formed as to the time of the stopping of the car in relation to her own act aforesaid, and not to a recollection of a fact which occurred at the time.    Her testimony is, in truth, not that this was a fact, although at times put by her in that form.    According to her own statement, as the incident in fact occurred, there was no interval of time between her own action aforesaid and the stopping of the car; they both occurred simultaneously.

For the foregoing reasons, we are of opinion to reverse the case and grant to the defendant a new trial, which will be accordingly done.

*Reversed.*