# Richmond

## KRITSELIS V. PETTY.

### January 20, 1921.

1. FIRES.—*Evidence—Responsibility of Defendant for Fire Question for Jury.*—In an action for fire damage defendant assigned as error that the evidence did not sufficiently connect him with the origin of the fire. The evidence upon this point was conflicting and its determination belonged to the jury. If they gave credence to the testimony for the plaintiff, it could not be said that the evidence did not sufficiently connect the defendant with the origin of the fire, and this assignment of error was therefore not well taken.

2. FIRES.—*Instructions—Defendant's Effort in Guarding Against and Extinguishing the Fire.*—In an action for fire damage, defendant assigned as error the failure of the court to give an instruction that they should find for defendant if they believed that defendant after discovering the fire and before it caused the damage complained of used reasonable and ordinary care in guarding it or extinguishing it. It appeared that defendant did no more than watch the progress of the fire and conclude that it was out, or that it would not reach plaintiff's property.

   *Held:* That the evidence did not warrant the instruction.

3. FIRES.—*Matters of Common Knowledge—Shifts in the Wind.*—It is a matter of ordinary knowledge that as a usual concomitant of a fire burning in dry grasses, or leaves, or other highly combustible material, shifts and changes in the direction of the wind may be expected. Moreover, in such materials, a fire will readily backfire and progress, though perhaps slowly, against the wind.

4. NEGLIGENCE.—*Proximate and Remote Cause—Probable Result of Negligent Act.*—An injury that is the natural, probable and ordinary result of a negligent act, is in law considered to have been within the contemplation of the negligent party as a probable and proximate result of his negligence, when he is informed, or by ordinary observation would have been in-

formed, of the facts and circumstances attending the negligence.

5. DAMAGES.—*Measure of Damages—Conflict of Evidence—New Trial —Excessive Damages.*—Although there was great disparity between the value placed on plaintiff's goods damaged by fire by the witnesses for the plaintiff and those for the defendant, particularly between the value given by plaintiff and his witnesses at the trial as contrasted with the value placed on the same goods by the plaintiff for the purposes of taxation, yet where the jury was adequately instructed in this respect, and there was no evidence that it acted from prejudice, or other improper motive, its verdict will not be set aside as excessive.

6. QUESTIONS OF LAW AND FACT.—*Province of Jury—Weight of Evidence—Credibility of Witnesses.*—It is the province of the jury to determine the weight of the evidence and the credibility of the witnesses.

7. NEW TRIALS.—*Appellate Court—Weight of Evidence.*—The trial court which has heard the witnesses testify is in a better position to pass on the weight to be attached to their testimony than the appellate court, and the action of the trial court in declining to interfere with the finding of the jury is entitled to weight in the appellate court.

Error to a judgment of the Circuit Court of Halifax county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*McKinney & Settle,* for the plaintiff in error.

*Jas. H. Guthrie,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

A. K. Kritselis, the plaintiff in error, is the owner of a farm near South Boston, in Halifax county. Charles Petty, the defendant in error, lived in a tenant house on this farm. On Sunday, March 23, 1919, Kritselis carelessly dropped a burning match in some broomstraw near his house. This

match ignited the broomstraw and the fire thus originated spread until it finally reached Petty's house and consumed the same and its entire contents.

Petty thereupon brought an action of trespass against Kritselis for the loss of his personal property which was destroyed in the house. The jury found a verdict in Petty's favor in the sum of $300. This verdict and the judgment following the same are now under review.

The plaintiff in error assigns three grounds on which he asks that the judgment of the circuit court be reversed:

1. That the evidence does not sufficiently connect the defendant, Kritselis, with the origin of the fire.

2. That even though he was responsible for its origin, the destruction of the house was too remote a result of the fire to be naturally anticipated, or expected, and he was therefore not chargeable with negligence.

3. That the damages awarded are excessive.

The testimony of R. S. Busick, a witness for the plaintiff, with respect to the origin and course of the fire, and the existing physical conditions, is as follows: "That he lives about a half or three quarters of a mile from Petty, saw the house burning and went there at once. That the defendant, Kritselis, was there, and when asked how the fire originated, said he struck a match to light a cigarette, and then threw this match down in the straw; that he did not think it would amount to anything, but it started a fire. That the straw was a broomstraw field, and it was two or three feet high; that the straw extended about half way from the place at which the fire started to the house in which the plaintiff lived, but it connected with hen nests grass and other grasses on the field, and it was so dry that the fire burned everything on the ground, and along the path to the stable (Petty's stable), and set some feed on fire that was stacked up by the stable, and burned up that, and from that communicated to the house and destroyed that; that the wind was blowing in the direction from the stable

23

to the house, which was only a short distance, the stable being on the edge of the yard near the house, and the fire was carried from that to the house."

The plaintiff, Petty, testified substantially to the above effect.

Robert Fountain, another witness for the plaintiff, testified that he could see the fire from his house, and he saw Mr. Kritselis and Mr. Coley standing at the fire in the field, and they left the fire, and went to the low grounds and commenced to pile brush.

The testimony to the contrary effect is given by the defendant, Kritselis, and A. C. Coley.

[1] The determination of this conflicting testimony belonged to the jury. If they gave credence to the testimony for the plaintiff, as they had the undoubted right to do, it can hardly be said that the "evidence does not sufficiently connect the defendant Kritselis with the origin of the fire." This assignment of error is not well taken.

[2] The plaintiff in error assigns as further error the failure of the court to give an instruction which was submitted upon the theory that the defendant, Kritselis, was relieved from the consequence of his original negligence by the subsequent exercise on his part of reasonable and ordinary care in guarding or extinguishing the fire.

This instruction is as follows: "The court instructs the jury that although they may believe that the fire which destroyed the plaintiff's goods originated from the act of the defendant, Kritselis, yet if they further believe from the evidence that said Kritselis after discovering the fire, and before it caused the damage complained of, used reasonable and ordinary care in guarding it or extinguishing it, then they should find for the defendant."

Kritselis does not appear to have done anything beyond watching the progress of the fire. He states "that he and Coley watched the fire burn in an easterly direction until

it had burned across the bottom to the road, and burned out. That the house which was burned was situated four or five hundred yards west of the place where the fire burned out. That the wind was blowing from west to east, and witness and Coley thought it was all out, and we considered it impossible to be blown against the wind, and go in the direction of the house. That he had never seen any trace of fire leading from the burnt field to the house. That he denied the fire could have been caused by, or originated from, the fire in the field."

Substantially to the same effect is the testimony of A. C. Coley.

[3, 4] There is nothing in this testimony, conceding it to be true, to relieve the defendant from the consequences of his original negligence. He was mistaken in thinking that the fire was out, or that it could not reach the plaintiff, or that the wind would not change. It is a matter of ordinary knowledge that as a usual concomitant of a fire burning in dry grasses, or leaves, or other highly combustible material, shifts and changes in the direction of the wind may be expected. Moreover, in such materials, a fire will readily backfire and progress, though perhaps slowly, against the wind. The fire that destroyed the plaintiff's property (without fault on his part) was none the less of negligent origin, because the defendant watched the same or erroneously concluded that it was out, or that it would not reach the plaintiff, or overlooked the likelihood of backfiring, or a change in the direction of the wind. Having in mind that everything was dry, and the very inflammable character of the herbage on the ground burned over, to-wit, broomstraw and hen nests and other grasses, the destruction of the plaintiff's property was a natural consequence, or ordinary result, of the defendant's original negligent act. An injury that is the natural, probable and ordinary result of a negligent act, is in law considered to have been within the contemplation of

the negligent party as a probable and proximate result of his negligence, when he is informed, or by ordinary observation would have been informed, of the facts and circumstances attending the negligence. *Benedict Pineapple Co.* v. *Atlantic C. L. R. R. Co.,* 55 Fla. 514, 46 So. 732, 20 L. R. A. (N. S.) 93.

The principle of liability in this connection is stated in *Jordan* v. *Wyatt,* 4 Gratt (45 Va.) 151, 157, 47 Am. Dec. 720. In this case W. had cut wood on J.'s land, and stacked it up. J., with no intention to burn W.'s wood, set fire to brush on another portion of his (J.'s) land. The fire escaped J.'s control, reached W.'s wood and consumed it. *Held:* That "It was no ground of defense that defendant (J.) was engaged in a lawful pursuit, and intended no harm, and that his act would have been harmless but for his negligence. He was none the less a trespasser. A man is bound so to conduct himself as to avoid doing damage to the person or property of another, and a slight default will render him responsible."

In *Tyler* v. *Ricamore,* 87 Va. 466, 12 S. E. 799, the court refused to instruct the jury to the effect that although the defendant negligently started the fire, yet if it was carried further on by a high and unusual wind, breaking the continuity of the fire, then the injury was too remote and the plaintiff could not recover. *Held:* Such refusal was not error, and the converse instruction was proper.

See also the following cases:

The fact that the fire has traveled over considerable space, and been revived by a wind after having apparently gone out before doing the damage, will not relieve liability. *Hardy* v. *Hines Bros. Lumber Co.,* 160 N. C. 113, 75 S. E. 855, 42 L. R. A. (N. S.) 759.

"The damage may not be too remote although the fire passes over three or four miles before it reaches the plaintiff's property." *Atchison, Topeka & Santa Fe R. Co.* v. *Stanford,* 12 Kan. 354, 15 Am. Rep. 362.

The fact that there was a change in the direction of the wind so as to blow the fire on to the land of the plaintiff, and into his grove, the mere change in the direction of the wind was not an intervening cause so as to deprive the plaintiff of his right to recover. *Florida E. C. R. Co.* v. *Welch,* 53 Fla. 146, 44 So. 250, 12 Ann. Cas. 210.

Applying the rulings announced in these cases to the facts of the case in judgment, it is apparent that there was no error in the action of the court refusing the instruction under consideration. The final destruction of the plaintiff's property, under the circumstances, was a natural consequence of the defendant's original negligence. Hence, that negligence was the proximate cause of the plaintiff's loss. There was nothing in the supervening conduct of the defendant to relieve him from liability for his initial negligent act.

[5] The third assignment of error is the action of the circuit court in refusing to sustain the motion to set aside the verdict on the ground that the damages awarded were excessive.

There is a very great disparity between the value placed on the plaintiff's goods by the witnesses for the plaintiff and those for the defendant. Particularly is this disparity manifested when the valuation of these goods, as given by the plaintiff and his witnesses at the trial, is contracted with the value placed on same by the plaintiff for the purpose of taxation, and with the value actually affixed by the commissioner of the revenue. But the jury was adequately instructed in this respect, and there is no evidence that it acted from prejudice, or any other improper motive. It is proper to say in this connection that we would not, acting as a jury, have rendered this verdict, but it does not follow from this statement that we ought to set aside the verdict actually returned.

"The assessment of damages is peculiarly the province of the jury, and when the question before the jury is merely

as to the *quantum* of damages to which a plaintiff is entitled, and there is evidence to sustain the verdict, no mere difference of opinion, however decided, justifies an interference with the verdict for that cause."

[6] There are many decisions by this court supporting the above proposition, as well as the proposition announced in *Virginian Ry. Co.* v. *Bell,* 118 Va. 492, 87 S. E. 570, that "it is the province of the jury to determine the weight of the evidence and the credibility of the witnesses."

[7] Furthermore, the court that heard the witnesses testify, and which was therefore in a better position than this court to pass on the weight to be attached to their testimony, declined to interfere with the finding of the jury.

We find no error in the judgment complained of, and the same is affirmed.

*Affirmed.*