## Wytheville.

VIRGINIA ELECTRIC AND POWER COMPANY V. MAY WALKER.

June 13, 1929.

The opinion states the case.

*Williams, Loyall & Taylor*, and *T. Justin Moore*, for the plaintiff in error.

*Coleman & Willis*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

Plaintiff, a married woman, forty-seven years old, a passenger on a motorbus of the defendant company operated along Broad Creek road, in the city of Norfolk, was injured while alighting at its intersection with Merrimac avenue. The jury returned a verdict in her favor for $1,500.00, which was confirmed by the trial court, and it is now before us on a writ of error.

This verdict, the defendant claims, is contrary to the evidence and without evidence to support it.

That offered on its behalf, if accepted, would have resulted in complete exoneration, but it was not accepted by the jury, and in the judgment of the trial judge need not have been accepted. We turn, therefore, to that given by the plaintiff, who was her own and only witness.

Her statement is that in proper time before Merrimac avenue was reached, she indicated her purpose to get off there. In chief, she said:

"Q. And how did this accident happen? Tell these gentlemen.

"A. I was getting off the bus when the bus started back and throwed me out. I was getting off the bus. That caused all the trouble.

"Q. Where did you want to get off the bus?

"A. On the corner of the Broad Creek road and Merrimac avenue.

"Q. When you started to get off the bus, was it moving or standing?

"A. It was moving, you know when anybody gets off. He started his bus and it come back and throwed me out.

"Q. When you first got down on the step was the bus standing or moving?

"A. It was moving and throwed me out.

"Q. When do you mean it was moving?

"A. The rebound. When I stepped out of the bus it rebounded and throwed me out.

"Q. Did the bus stop for you to get off, or not?

"A. Yes.

"Q. Then, what did you do?

"A. When I went to get out here it moved backward and throwed me out.

"Q. Was it standing still when you got down on the steps to get off?

"A. Yes, it was standing still.

"Q. What caused you to fall?

"A. It rebounded and throwed me out before I got on the ground.

"Q. It moved while you were getting out. Is that what it did?

"A. Yes; that is what it done.

"Q. Did it stop at that corner for you to get off?

"A. Yes, sir.

"Q. And when you were getting off it started and threw you?

"A. Yes.

"Q. Tell us how it happened, in your own way.

"A. When I went to get off the bus the bus kind of started, and when I went to get out of the bus it started off and throwed me out.

"Q. Was it moving when you went to step off it?

"A. It was standing when I started to get off the bus. Before I could get off the bus it went back and throwed me out.

"Q. Mr. Williams says you got off the bus safely without falling and you fell way out in the street somewhere?

"A. No, indeed, I did not. So help me Lord I did not. It throwed me out of that bus on my left side."

This account of the accident is in substance restated on cross-examination. It further appears that as she lay upon the ground her feet were near the bus door with body to the rear and at an angle of about forty-five degrees from it. All of this defendant contends violates the law of physics and is inherently improbable.

■■ In *Va. R. & P. Co.* v. *Bailey*, 123 Va. 250, 96 S. E. 275, the court said: "It is well established that the statutory rule (section 3484, Code of Virginia [1904]), under which we must consider the evidence

in the case before us, 'cannot compel us to accept as
true what in the nature of things could not have
occurred in the manner and under the circumstances
narrated.' *N. & W. Ry. Co.* v. *Strickler,* 118 Va. 153,
155, 86 S. E. 824, and *Virginian Ry. Co.* v. *Bell,* 113
Va. 492, 495, 87 S. E. 570, and authorities cited in
these cases."

If Mrs. Walker's evidence falls within this rule, it
would be unavailing, even on demurrer; but does it?
Fairly construed, it appears that the bus came to a
full stop after which it moved suddenly and unex-
pectedly backwards just as she was getting off and
threw her to the ground.

Defendant relies strongly upon the *Bailey Case.*
There, as here, judgment was for the plaintiff, but was
set aside on appeal as falling within the rule noted.
Mrs. Bailey stood on the running board of a street car,
which started suddenly forward as she was about to
get off. Her evidence was "when the car jerked, I was
thrown this way, kind of forward." The court said
such a movement would have thrown her backwards.

It is certainly true that when one stands upon
a platform which moves suddenly forward, and is
thrown, the tendency is to fall backwards and not
forwards, but when one steps from a moving platform
to the ground, or is thrown from it, the tendency is to
fall forward. And so it is common knowledge that
prudence requires one stepping from a moving train
to face to the direction in which it is going. Before
these laws of gravity and momentum become natural,
a certain rate of speed must be attained. If one is
merely overbalanced by a sudden jerk, it is not possible,
as a matter of law, to say in what direction he will
fall. In the instant case, it is probable that this is
what occurred, but if there was sufficient speed to

affect the direction of plaintiff's fall, then, when thrown from the car, she would naturally have fallen in the direction in which it was moving, and this is what did occur. The car was moving to the rear and she so fell backwards just as she would have fallen forward had she been thrown when it was moving forward. There is nothing inherently improbable in her account of the accident.

■ In headnote 3 of the *Bailey Case*, sustained by the text, it is said: "If a passenger is thrown from a car and injured, while in the act of alighting, by the starting of the car after it has stopped, the carrier is liable for the injuries sustained by the passenger; whether the movement of the car in starting is violent or not is immaterial. It being unexpected is sufficient to charge the carrier, it being its duty to give reasonable time for the passenger to alight after having stopped the car." This, of course, upon the assumption that there is no contributory negligence.

We are of opinion that there is nothing improbable in plaintiff's account of how she was hurt, and that the jury was warranted in believing that the accident was occasioned by a sudden, unexpected and negligent movement of the bus.

The judgment appealed from must be affirmed, and it is so ordered.

*Affirmed.*