Justice KINSER, dissenting.
 

 I respectfully disagree with the majority's conclusion that the evidence was insufficient to sustain Morris' two convictions for felonious child neglect in violation of Code § 18.2-371.1(B) and accordingly would affirm the judgment of the Court of Appeals.
 

 When the sufficiency of the evidence is challenged on appeal, this Court is required to view the evidence in the light most favorable to the prevailing party at trial, in this case the Commonwealth, and accord to that party the benefit of all reasonable inferences fairly deducible from the evidence.
 
 Viney v. Commonwealth,
 

 269 Va. 296
 
 , 299,
 
 609 S.E.2d 26
 
 , 28 (2005);
 
 Jackson v. Commonwealth,
 

 267 Va. 178
 
 , 204,
 
 590 S.E.2d 520
 
 , 535 (2004);
 
 Zimmerman v. Commonwealth,
 

 266 Va. 384
 
 , 386,
 
 585 S.E.2d 538
 
 , 539 (2003). "Additionally, this Court has the duty to review the evidence that tends to support the conviction. . .."
 
 Correll v. Commonwealth,
 

 269 Va. 3
 
 , 12,
 
 607 S.E.2d 119
 
 , 124 (2005). "The judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is `plainly wrong or without evidence to support it.'"
 
 Viney,
 

 269 Va. at 299
 
 ,
 
 609 S.E.2d at 28
 
 (quoting Code § 8.01-680). Although the majority cites these well-established principles of appellate review and acknowledges that this Court cannot substitute its judgment for that of the fact finder, I believe that the majority fails to consider the evidence that supports the convictions in the light most favorable to the Commonwealth but, instead, makes its own credibility determinations and substitutes its view of the facts for the judgment of the trial court.
 

 The majority contrasts the facts in the case at bar with those in
 
 Barrett v. Commonwealth,
 

 268 Va. 170
 
 ,
 
 597 S.E.2d 104
 
 (2004), by focusing on Barrett's knowledge of her two children's prior behavior that should have forewarned Barrett about the likelihood of injury to one or both of her children and her state of fatigue resulting from intoxication on the evening before the incident at issue in that case. The majority asserts that, unlike Barrett, "Morris had no reason to believe her children would be in any danger while she was asleep." Viewing the evidence in the light most favorable to the Commonwealth, I disagree.
 

 Morris was indeed on notice about her children's propensity to wander from the trailer without her knowledge or any adult supervision. Morris admitted to one of the police officers that a similar episode had occurred "a few days prior to [the incident at issue], [and] that somebody in the trailer park had to return [the children] home." Despite this notice, Morris fell into such a coma-like sleep during the daytime that she could not be aroused for a period of more than two hours by repeated banging on her door and a barking dog. She was sleeping so soundly that she did not realize her children had gotten out of the bed, unlocked the chain lock on the door and the doorknob lock, both of which Morris allegedly had locked, and left the trailer. She did not hear the police officer's entry into the trailer or respond to his calls announcing he was a police officer. Even more disturbing is the fact Morris was in such a deep sleep that she did not hear her younger child calling for "mommy" when he ran back into the trailer.
 

 Despite the overwhelming evidence about Morris' coma-like sleep on the day in question, the majority concludes there was no evidence presented to show that Morris was under the influence of drugs or alcohol when her children wandered out of the trailer. At trial, Morris acknowledged, however, that she had used cocaine about three days prior to the incident, and when asked if she has a significant substance abuse problem, Morris answered, "I do." Furthermore, when questioned about the nature of her substance abuse problem, she replied, "I was using cocaine." Yet, the majority concludes that "[i]t is mere speculation . . . to say that Morris' sleep was likely drug or alcohol induced."
 

 The majority apparently chooses to believe Morris' testimony denying that she was under
 the influence of drugs on the day in question despite the fact Morris lied about being the children's mother. When the police officers questioned Morris at her trailer, she initially identified herself as Billie Jean Lloyd and stated that the children were her nephews. After Morris' mother arrived at the trailer, Morris told the police that the children were hers but still used the name, Billie Jean Lloyd. Only after further conversations with her mother did Morris admit her true identity. Morris testified at trial that she gave false information to the police officers because she thought there was an outstanding warrant for her arrest.
 

 Given Morris' greater concern about an arrest warrant than the condition of her children or their whereabouts, and her lying to conceal her identity, the fact finder was entitled to give little weight to Morris' testimony. In fact, the trial court noted her lack of credibility, evidenced by her denying that she was the children's mother. "The factfinder need not believe an accused's explanation and, if that explanation is not believed, may infer that the accused is lying to conceal [her] guilt."
 
 Phan v. Commonwealth,
 

 258 Va. 506
 
 , 511,
 
 521 S.E.2d 282
 
 , 284 (1999). Moreover, this Court is not free to re-weigh the evidence.
 
 See Virginian Ry. Co. v. Bell,
 

 118 Va. 492
 
 , 495,
 
 87 S.E. 570
 
 , 572 (1916)(appellate court "cannot consider the weight of the evidence or the credibility of the witnesses"). "We must review the evidence in this case not with respect to what action we might have taken, but as to whether the evidence justified the trial judge, as a trier of the facts, in finding defendant guilty."
 
 Avent v. Commonwealth,
 

 209 Va. 474
 
 , 477,
 
 164 S.E.2d 655
 
 , 657 (1968).
 

 The saga does not end here. The older child had certain disabilities that caused him to be unable to respond to the police officer's inquiries about where he lived. The child was not even able to give his name to the officer. Furthermore, the condition of the younger child, in particular his state of nakedness with dried fecal matter on his legs and chafing on his posterior, demonstrates that the child had been left unattended for a significant period of time. In fact, because of the child's condition and the dangerous automobile parts around which the children were playing, the family support worker from the elementary school was so concerned that he called child protective services and then "9-1-1."
 

 As this Court stated in
 
 Barrett,
 
 we must view "all the circumstances preceding and surrounding" the incident on the day in question. 268 at 184,
 
 597 S.E.2d at 111
 
 . In light of the older child's disabilities, the young age of the other child, Morris' knowledge of the prior incident when her children wandered from the trailer, and her coma-like sleep on the day in question, I conclude that Morris "created a situation `reasonably calculated to produce injury, or which [made] it not improbable that injury [would] be occasioned, and [she knew], or [was] charged with the knowledge of, the probable results of [her] acts.'"
 

 Id.
 

 at 184
 
 ,
 
 597 S.E.2d at 111
 
 (quoting
 
 Cable v. Commonwealth,
 

 243 Va. 236
 
 , 240,
 
 415 S.E.2d 218
 
 , 220 (1992)). Thus, I reach the same conclusion as this Court did in
 
 Barrett.
 
 The fact finder could have reasonably concluded that Morris' "conduct was willful and accompanied by acts of omission of a wanton nature showing a reckless or indifferent disregard of the life and health of both children."
 
 Id.
 
 at 185,
 
 597 S.E.2d at 112
 
 .
 

 For these reasons, I respectfully dissent and would affirm the judgment of the Court of Appeals.