ST. LOUIS & S. F. R. CO. v. MATLOCK.

(Court of Civil Appeals of Texas. Dallas. Dec. 2, 1911. Rehearing Denied Dec. 23, 1911.)

1. REMOVAL OF CAUSES (§ 26*) — DIVERSE CITIZENSHIP.

Where neither party to a suit is a resident of the state where it is begun, there is no right of removal to the federal courts on the ground of diversity of citizenship.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 60–63; Dec. Dig. § 26.*]

2. DEPOSITIONS (§ 45*)—INTERROGATORIES—STATUTES.

Under the statute, the party taking depositions may file interrogatories and serve notice upon the adverse party, who is entitled to cross-examine, by cross-interrogatories filed before the issuance of the commission; but, if cross-interrogatories are not filed, the adverse party, if he wishes further information from the deponent, must make him his own witness, propounding direct interrogatories and giving the opposite party notice and opportunity to cross-examine, and hence such direct interrogatories are objectionable if they propound leading questions.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. § 67; Dec. Dig. § 45.*]

3. APPEAL AND ERROR (§ 1058*)—REVIEW—HARMLESS ERROR.

The exclusion of the proffered testimony of a witness is not prejudicial error where the same witness and other witnesses later testify to the facts sought to be shown by the proffer.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200–4206; Dec. Dig. § 1058.*]

4. MASTER AND SERVANT (§ 291*)—ACTIONS—INSTRUCTIONS.

A petition by plaintiff, a brakeman, alleged that a coupling failed, that plaintiff in the discharge of his duty and after the engineer had given a stop signal, went between the cars to open and adjust the knuckle, and that the engineer, without any signal or warning, negligently moved the car upon which plaintiff was working, and thus crushed plaintiff's hand. Held that, as the gist of the negligence alleged was the moving of the train while plaintiff was between the cars, an instruction authorizing a recovery by plaintiff, without a finding that the train was moved without a signal, was not erroneous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1136; Dec. Dig. § 291.*]

5. TRIAL (§ 141*) — QUESTIONS OF LAW FOR COURT.

In an action by a brakeman injured while opening the knuckle on a car so that a coupling might be made, where the uncontroverted evidence showed that the engine was operated exclusively by signals, the question

as to the duty of the engineer to obey signals was one of law for the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336; Dec. Dig. § 141.*]

6. APPEAL AND ERROR (§ 1062*)—REVIEW—HARMLESS ERROR.

In an action by a brakeman injured by the backing down of the engine upon a car on which he was working, where the court was authorized as a matter of law to charge that it was the duty of the engineer to obey signals, a charge submitting that question to the jury was not prejudicial to the defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

7. MASTER AND SERVANT (§ 297*)—INJURIES TO SERVANT—ACTIONS—INSTRUCTIONS.

In an action by a brakeman injured by the backing of the engine against a car on which he was working, a charge authorizing a recovery if the engineer, in the exercise of ordinary care and by the use of the means at hand, could have stopped the engine in obedience to signals, did not warrant a finding that when the engineer was given a signal to stop he was under an absolute duty to stop the engine.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1197; Dec. Dig. § 297.*]

8. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

In an action by a brakeman injured by the backing down of the train upon the car on which he was working, a charge authorizing a recovery in case the engineer, in the exercise of ordinary care, and by the use of the means at hand, could have stopped the engine in obedience to a signal given, when construed with the entire charge, other paragraphs of which told the jury that, if the engineer obeyed the signal to stop the engine, and did stop it in the usual manner, then no recovery could be had, was not erroneous in informing the jury that the engineer was under an absolute duty to stop the engine as soon as he received the signal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

9. TRIAL (§ 296*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

In an action by a brakeman injured by the backing down of a train upon the car on which he was working, a charge authorizing a recovery if the engineer failed to obey a signal to stop the engine, when considered with that portion of the charge permitting the jury to find that the engineer was negligent if he failed to obey a signal and permitted the engine and cars to move backward until they collided, did not inform the jury that it was the duty of the engineer to stop the engine as quickly as possible.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 296.*]

10. MASTER AND SERVANT (§ 291*)—INJURIES TO SERVANT—INSTRUCTIONS—APPLICABILITY TO PLEADINGS.

In an action by a brakeman injured by the backing down of a train upon the cars between which he was working, a charge that, if the engineer failed to obey a signal to stop, he was guilty of negligence, was applicable to the allegations of the petition that the signal was given the engineer to stop so that plaintiff might go between the cars, and that he relied upon the engineer to stop the train, as it was his duty to do, but that the engineer failed to stop, for, the engineer having knowledge that the brakeman was between the cars, it would

be his duty to exercise ordinary care to obey the signals and avoid injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1136; Dec. Dig. § 291.*]

11. TRIAL (§ 260*)—INSTRUCTIONS—INSTRUCTIONS COVERED BY OTHERS.

The refusal of a requested charge covered by the charge as given was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

12. APPEAL AND ERROR (§ 731*)—ASSIGNMENTS OF ERROR—REQUISITES.

An assignment of error, in a personal injury case, that the verdict is greatly excessive, is too indefinite for consideration.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3017; Dec. Dig. § 731.*]

13. APPEAL AND ERROR (§ 302*)—MOTION FOR NEW TRIAL—GROUNDS.

A ground alleged in a motion for new trial in an action for personal injuries that the verdict is excessive, without pointing out wherein it is excessive, is too general to be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1744–1752; Dec. Dig. § 302.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by Rains Matlock against the St. Louis & San Francisco Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Andrews, Ball & Streetman and Head, Smith & Head, for appellant. Wolfe, Maxey, Wood & Haven and B. F. Gafford, for appellee.

TALBOT, J. On March 22, 1910, appellee instituted this suit against appellant, alleging that appellee was a citizen of the state of Oklahoma; that appellant was a citizen of the state of Missouri; that appellant was engaged in operating lines of railway extending through the states of Oklahoma and Texas over which it operates freight and passenger trains; that on the 27th day of December, 1909, appellee was in the employ of appellant as a railway brakeman; that while in the performance of his duties as such, and while coupling cars at Weleetka, Okl., by reason of the negligence of appellant's engineer, in the operation of his engine, his right hand was caught between the drawheads and coupling apparatus on the cars and so injured as to render amputation of the same necessary. Appellant presented petition and bond to remove the cause to the Circuit Court of the United States for the Eastern District of Texas, which petition was by the district court denied. To the merits appellant answered by pleading a general denial, assumed risk, and contributory negligence. On October 27, 1910, the cause was tried before the court and a jury and resulted in a verdict and judgment in favor of appellee for $10,000. Appellant presented its motion for a new trial, which was, by the court, overruled,

and notice of appeal was given, the appeal perfected, and the cause brought to this court for review.

The evidence was sufficient to sustain the material allegations of the plaintiff's petition and to justify the conclusion that he was not guilty of contributory negligence.

[1] The first assignment of error complains that the court erred in denying defendant's petition for a removal of the cause to the Circuit Court of the United States for the Eastern District of Texas. This assignment will be overruled. Where neither of the parties to a suit is a resident of the state where the suit is filed, there is no right of removal to the Circuit Court of the United States on the ground of diverse citizenship. We so held in the case of Railway Co. v. Kiser, 136 S. W. 853, and further consideration of the question has not led us to a different conclusion.

[2] The second assignment of error is: "The court erred in sustaining plaintiff's motion to strike out portions of the deposition of O. E. Henderson taken by defendant as appears from defendant's bill of exceptions No. 2." Two propositions are presented under this assignment, as follows: (1) When the deposition of a witness is offered by one party to a lawsuit adverse to the claim of the other party, the court, in the exercise of a sound judicial discretion, should permit a reasonable cross-examination of the witness by the other party, either by permitting the witness to be cross-examined in person, or by interrogatories propounded and a deposition taken for that purpose, or by any other method recognized by the law for the production of testimony before the court. (2) If a party to a lawsuit is deprived of the right to cross-examine a witness of the other party by the action of the court, the judgment will be reversed if probable injury to him result therefrom. It appears that appellee propounded interrogatories to, and on the 30th day of March, 1910, took the depositions of, O. E. Henderson before Warren H. Brown, notary public, and same were returned and filed in court. Subsequently, appellant filed interrogatories, procured a commission, and took the depositions of the same witness before S. N. Hurd, notary public, on May 13, 1910. Appellee moved to quash portions of the answers in the latter depositions, on the grounds that said answers were leading and suggestive and not responsive to the interrogatory propounded, and said motion was sustained. It is admitted that the questions and answers quashed were subject to the objection that the questions were leading and suggested the answer desired; but it is contended that the appellant had secured a written statement from the witness relative to how the accident, resulting in appellee's injury, happened, prior to the taking of his deposition by appellee, that said deposition was materially at variance with the written statement previously obtained by appellant, and that, when appellant discovered such variance, it had a right, especially in view of the fact that the witness was a nonresident, to cross-examine him upon the matters involved, by retaking his depositions, and to use leading questions in so doing. In this contention we do not concur. The method of securing the testimony of a witness by deposition is explicitly prescribed by our statute. Under this statute, if a party to a suit files interrogatories for the purpose of taking the deposition of a witness, and notice thereof is served on the adverse party, to entitle the latter to cross-examine the witness by propounding to him leading questions, he must file cross-interrogatories before the issuance of the commission. If, after due notice, he fails to file cross-interrogatories within the time allowed for the issuance of the commission, and the same is issued and the depositions taken, and he desires thereafter to obtain other or additional testimony from the witness, he must propound direct interrogatories to him and give the opposite party notice, and in such case the witness becomes his witness, and leading questions are subject to objection.

[3] But, however this may be, we are inclined to think the action of the court in this matter does not constitute reversible error for the reason that the material testimony excluded, in substance, was embraced in other testimony of the same witness and other witnesses.

[4] It is assigned that the court erred in the following portions of its general charge to the jury, namely: "Now, bearing in mind the foregoing instructions, if you believe from the evidence that on the occasion in question it became his duty, in the performance of his work under his employment, for plaintiff to open and adjust the knuckle on a car that was standing on a side track in said town of Weleetka so that said car could be coupled onto another car attached to the engine that was being backed down said track; and if you further believe from the evidence that plaintiff signaled to the engineer operating said engine to stop same so that plaintiff could go in between said cars to adjust said knuckle; and if you further believe from the evidence that said engineer did stop his engine and the cars attached thereto, and that thereupon plaintiff went in between the cars standing on the side track and the cars attached to said engine to adjust the knuckle of said car; and if you further believe from the evidence that while plaintiff was so engaged, if you find he was so engaged, said engineer caused and permitted the engine and cars attached thereto to move backward and come in contact with the car with which plaintiff was working, if you find he was working with said car, and thereby injured plaintiff in his right hand; and if you further believe from the

evidence that in causing and permitting said engine and cars to move backward at said time until they struck the other car, if you find he did cause and permit same to so move backward, said engineer was guilty of negligence, as that term has been hereinbefore defined to you, and that such negligence, if any, was the direct and proximate cause of the injury to plaintiff's hand—then you will find for plaintiff and assess his damages as hereinafter directed, unless you should find for defendant under other instructions given you." It is contended that this charge is erroneous in that it is not confined to the negligence charged in the petition; that the petition charged negligence in starting the engine after it stopped without a signal to start and without any warning to appellee, whereas, the charge submits the issue of stopping the engine for appellee to go between the cars and starting it at a time when he was between the cars. The allegations of negligence to which this assignment relates are as follows: "While engaged in the performance of the work in which plaintiff and the other members of the train crew were engaged in Weleetka, in the state of Oklahoma, it became necessary to make a coupling of a car attached to the engine with a car that was on the side track. That when said coupling was attempted to be made by shoving the car attached to the engine against the other car, the coupling failed to make, thereupon it became necessary, and was plaintiff's duty, to open and adjust the knuckle on the car that was standing on the side track. That under the usual and customary practice and proper method of operating the engine, the engineer operates same by signals. In order for plaintiff to adjust the knuckle on said car, a stop signal was given the engineer to stop said engine, which he obeyed, and the engine and cars attached thereto were stopped. Plaintiff then went between the cars to adjust the knuckle with his hands, and while so engaged, without any signal so to do, and when no signal therefor had been given him, the engineer, without giving any warning, negligently caused the engine and cars attached thereto to move backward, and plaintiff's right hand was caught between the drawheads and coupling apparatus on the cars, and the muscles, flesh, and bones thereof so bruised, lacerated, torn, and broken as to render its amputation necessary." We do not think the court's charge materially departs from the allegations of the petition. The real ground or gist of the negligence alleged is, as submitted in the charge of the court, the starting and moving of the engine back by the engineer after the same had been stopped, while the plaintiff was between the cars adjusting the knuckle, thereby causing his hand to be caught and injured, and it is not probable that the failure of the charge to require the jury to find, in order to return a verdict for the plaintiff on this phase of the case, that such starting and backward movement of the train was done, as alleged in the petition, without a signal or warning, misled the jury or otherwise resulted in injury to appellant.

It is also assigned that the court erred in the following portion of its general charge: "Or if, on the occasion in question, you believe from the evidence that plaintiff went in between a car on the side track, and one that was being backed by said engine for the purpose of adjusting the knuckle of said car on the side track so that the same would couple with the car connected with the engine, and that for said purpose before going between the cars he signaled the engineer to stop said engine; and if you further believe from the evidence that it was the duty of the engineer to obey said signal and stop said engine; and if you further believe from the evidence that said engineer did not obey said stop signal to stop said engine, but caused and permitted same to continue moving backward until the car attached to said engine and the cars standing on the side track to which plaintiff had gone to adjust the knuckle came together, and plaintiff's hand was thereby injured; and if you further believe from the evidence that the engineer, in the exercise of ordinary care, by the use of the means he had at hand in the usual and customary manner under such signals, could and would have stopped the engine and cars thereto attached before the cars attached to the engine collided with the other car; and if you further believe from the evidence that in failing to obey said stop signal at said time and causing and permitting the engine and cars to continue to move backward, if you find there was such stop signal given and that said engineer failed to obey same and caused and permitted the engine and cars to continue to move backward until same collided with another car—said engineer was guilty of negligence, as that term has been hereinbefore defined to you. And that such negligence, if any, was the direct and proximate cause of the injury to plaintiff's hand, then in either of these events you will find for plaintiff and assess his damages as hereinafter directed, unless you should find for defendant under other instructions given you." The propositions contended for under this assignment are: (1) That the charge is erroneous in that the jury are told that they will ascertain the duty of the engineer when he got a stop signal from the evidence, whereas the duty of the engineer was a matter of law for the court to advise the jury in reference to. (2) The charge is erroneous in that the jury are instructed that they may find from the evidence that, when the engineer was given a stop signal, he was under an absolute duty to stop the engine, while the law only imposes the duty of exercising ordinary care to stop the engine

under the circumstances. (3) The charge is erroneous in that it in part requires the engineer to use the means at his command to stop as quickly as he could, whereas a duty does not arise except in the case of discovered peril, which is not involved in this case. (4) There is no pleading that the engineer knew that appellee was going between the cars or was in danger at the time of the accident, and no facts were offered that he knew or ought to have known it. Under the circumstances, no duty was owing by the engineer to appellee with reference to stopping the engine.

The allegation on which the clause of the charge here complained of is based reads thus: "If plaintiff be mistaken in the foregoing allegations as to the manner in which the engine and cars were operated and the injuries inflicted upon him, then he says that, when the coupling between the cars failed to make, the engineer was given a signal to stop so that plaintiff could go between the cars, which it was his duty to do, and adjust the knuckle on the car that was standing on the side track so that the coupling would make. That he relied on the engineer to obey said stop signal, as it was his duty to do, and, expecting that said signal would be obeyed and the engine and cars attached thereto stopped, immediately after giving said stop signal, plaintiff went between the cars to adjust the knuckle, and proceeded in the usual and proper way, working at said knuckle. That the engineer negligently failed to observe or obey said stop signal, and negligently failed to stop the engine and cars thereto attached, and caused and permitted same to continue to move back until the car next to the engine collided with the car knuckle of which plaintiff was engaged in adjusting, and his hand was thereby caused to be caught and injured as aforesaid. That it was proper and was the duty of the engineer, when said cars collided as aforesaid, to immediately stop said engine and cars thereto attached; but, instead of doing so, he made no effort to stop same and negligently permitted and caused same to move backward, and plaintiff's hand was caught and injured by the means and in the manner aforesaid."

[5, 6] 1. We think there was no material error in the charge. We are inclined to the view that the duty of an engineer, as to how he should operate his engine upon receiving a signal, is ordinarily a question of fact which should be submitted to the jury. In this case, however, the undisputed evidence showed that the engine was operated exclusively by signals, and that the engineer was expected to and should have obeyed the signals. This being true, the court would have been authorized to charge the jury, as a matter of law, that it was the duty of the engineer when he received a stop signal to obey it. The charge there-

fore, in submitting the question of the engineer's duty with respect to the matter referred to, was favorable to appellant, and, if error, was one of which it has no just cause to complain. But whether it was the duty of the court to instruct the jury, as a matter of law, as to how the engineer should have operated his engine, or whether that was a question of fact to be ascertained by the jury from the evidence, the failure of the court to so instruct was not so prejudicial to the appellant as to require a reversal of the case.

[7, 8] 2. The clause of the charge in question does not, it occurs to us, inform the jury that they were authorized to find that when the engineer was given a stop signal he was under an absolute duty to stop the engine. It requires, among other things, as essential to plaintiff's right of recovery, that the engineer, "in the exercise of ordinary care, by the use of the means he had at hand in the usual and customary manner under such signals, could and would have stopped the engine and cars thereto attached before the cars attached to the engine collided with the other car." But if the language of the charge quoted does not relieve it from the criticism that it imposed upon the engineer the absolute duty to stop his engine when he received a stop signal, then it may be said that the court's charge must be considered as a whole, and that when it is so considered it required no higher duty of the engineer than the exercise of ordinary care to operate the engine according to the signals given him. In the fourth paragraph of the charge the jury were instructed as follows: "It was the duty of the engineer operating the engine on the occasion in question to exercise such care in operating same to avoid injury to plaintiff as an ordinarily prudent person would have exercised under the same or similar circumstances, and if said engineer failed to exercise such care, and such failure directly and proximately caused the injury to plaintiff's hand, then the defendant would be liable for such injury if the plaintiff was himself not guilty of negligence. On the other hand, it was the duty of plaintiff to exercise ordinary care for his own safety, and, if he failed to exercise such care, then the defendant would not be liable even if you should find that the engineer was guilty of negligence which directly and proximately caused said injury." They were further instructed, in the seventh paragraph, that, if the engineer obeyed the signal to stop the engine and did stop it in the usual and customary manner of stopping the same, to find for the defendant on that issue.

[9] 3. The charge did not require the engineer, in the sense urged by the appellant, as we understand it, to use the means at his command to stop the engine *as quickly*

*as he could.* As said, the charge, considered as a whole, if the clause in question did not itself do so, only imposed upon the engineer the duty of exercising ordinary care, with the means at his command, to stop the engine in the usual and customary manner, and only authorized, in effect, the jury to find that he was guilty of negligence in the event they should find that by the exercise of ordinary care in the usual and customary manner of operating the engine he could and would have stopped it before the cars collided and injured appellee.

[10] 4. The proposition that there was no pleading that the engineer knew that appellee was going between the cars, or was in danger at the time of the accident, and no facts were offered that he knew or ought to have known it, cannot be maintained. As said by counsel for the appellee, the engineer, having knowledge of the work that was being done and the usual and customary manner of doing it, owed appellee the duty of ordinary care to obey the signals in the operation of the engine to avoid any and all danger that might arise to appellee while in the discharge of any duty incident to the usual, customary, and proper manner of doing the work that was being done, and this, whether or not at all times while the work was being done he knew the exact position of appellee and the other employés. The allegations of his petition are sufficient to charge the engineer with knowledge of the fact that appellee was going between the cars to perform the work required of him, and they are amply supported by the evidence.

[11] The fifth assignment complains of the court's refusal to give the following special charge requested by appellant: "Under the facts of this case, there was no duty on the part of the engineer at the time plaintiff was injured to stop his engine as quickly as he could, but only to use ordinary care to make a usual and customary stop, and, if you believe from the evidence that the engineer used ordinary care to make a usual and customary stop after he received the stop signal, then you will find for the defendant on the issue of failing to stop the engine." The proposition presented under this assignment is as follows: "The court having erroneously charged the jury that when he received a stop signal it was the duty of the engineer to stop as quickly as he could, he should have modified such charge and given the requested one." It is a sufficient answer to this contention to say that the court's charge, when fairly construed, did not instruct the jury that it was the duty of the engineer, when he received a stop signal, to stop the engine as quickly as he could, but only required of him the exercise of ordinary care, with the means he had, to stop the engine in the usual and customary manner. The requested charge therefore was not necessary, upon the ground urged, for the protection of appellant's rights and its refusal furnishes no sufficient ground for a reversal of the case.

[12] The sixth and last assignment is: "The verdict of the jury is greatly excessive in amount." Appellee objects to the consideration of this assignment, because: (1) It does not conform to the rules in that it is too general; (2) because the question of whether the verdict is excessive was not properly presented in appellant's motion for a new trial in the district court, in that said motion wholly fails to specify wherein the verdict is subject to such objection. It is clear that the assignment is not in compliance with the rules, and, under the uniform decisions of the appellate courts of this state, is not entitled to consideration. City of Galveston v. Devlin, 84 Tex. 319, 19 S. W. 395; White v. Wadlington, 78 Tex. 159, 14 S. W. 296; Railway Co. v. Scharbauer, 52 S. W. 589; Consolidated Co. v. Conring et al., 33 S. W. 547.

[13] Again, the motion for a new trial is as general as the assignment of error. In Railway Co. v. McVey, 81 S. W. 991, it is said: "The question of excessiveness of verdict is a question of fact, and, like all questions of fact, where the case is tried before the court and a jury, the attention of the trial court should be called to the insufficiency of the evidence in the motion for a new trial, not in a general way, but specifically, so that the trial court might correct the error, if there be one. The assignment of error must be predicated upon a ground good and sufficiently stated in the motion for new trial."

Finding no reversible error in the record, the judgment of the court below is affirmed.