## TEXAS EMPLOYERS INS. ASS'N v. HALE.

No. 13598.

Court of Civil Appeals of Texas. Dallas.
April 20, 1945.

Rehearing Denied June 29, 1945.

Burford, Ryburn, Hincks & Charlton and Logan Ford, all of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

YOUNG, Justice.

This is a workman's compensation suit, third trial, second appeal. The first verdict and judgment, awarding compensation as for total and permanent disability, was reversed for procedural errors, Texas Employers Ins. Ass'n v. Hale, Tex.Civ.App., 167 S.W.2d 575. The result of second trial was inconclusive; and, consequent upon the present hearing, a judgment again in terms of total and permanent incapacity, has been brought up for review. A detail of jury issues and answers may be omitted except as necessary to points hereinafter discussed. Plaintiff had been an employe of Interstate Trinity Warehouse Company for a number of years, handling household goods and furniture; later a packer and crater; and according to him the circumstances leading up to said accidental injuries on February 9, 1940, were briefly these: At the time he was engaged in moving a large piece of furniture—a chifforobe—from the second floor home of a Mr. Fryer down a small inside stairway to the company van. The chifforobe was packed with sundry effects and heavy, weighing around 400 pounds, some 5x4x2½ feet in size. He was at the front end lifting same sufficiently to keep the legs from dragging, facing an assistant at the rear end. In trying to change his grip he became overbalanced, "kind of tripped"; and, still holding on to the furniture, its weight bent his body backward into some position not accurately shown by the record. He testified to immediately feeling a severe pain through the back as if jabbed with "a hot iron or something," and another man

901

came to his assistance. Hale stated that he stood aside, sat down and began "to try to get to where I could stand up"; going out into the yard, turning "kind of sick"; that his part of the moving job from then on was on the truck placing pads around the loaded furniture; reporting the incident on return to the office, continuing his employment but avoiding heavy duties until June 20, when he quit work; then telling other company officials of his physical condition, Mr. Abernathy sending him to the company doctors. Hale testified to no back pains prior to the February occurrence, and his first "check-up" thereafter was by Dr. Row of the Veterans' Bureau, for presumed prostate and kidney trouble. From then on, under plaintiff's statement, he has been wholly unable to perform manual labor, with constant pain and misery in back, hips and legs; loss of control over limbs and nerves, inability to sleep and rest.

Appellant denied that Hale sustained either accident or injuries; the gist of its fact defense in this 958 page record being that his disability was solely due to a bodily condition existing long prior to the alleged accident and in nowise associated therewith, namely, lumbago, tubercular, kidney and prostate troubles resulting in chronic arthritis.

Following appellant's contention that its timely motion for instructed verdict should have been granted, a summary of its points of appeal are: (a) The court's error in failing to grant new trial because of an insufficiency of evidence to support the jury verdict that plaintiff suffered an accident on February 9, 1940, or that his claim of disability beginning June 20 was the result of any accident occurring on the earlier date; (b) error in instructing the jury that their answers to the special issues should be "arrived at from a preponderance of the testimony"; (c) erroneous exclusion of defendant's Exhibits 33 and 34 consisting of X-ray pictures offered in connection with the medical testimony of Dr. Holtz for the limited purpose of illustrating a normal back and range of the intervertebral spacing therein; (d) in connection with issues 1, 2, 3 and 4, the court erred; in failing to eliminate from consideration by the jury evidence of certain injuries which were neither pled nor relied upon by plaintiff as causing disability, viz: kidney and prostate gland trouble, herniation or rupture of the seventh and ninth thoracic, and first, second, third and fourth lumbar vertebrae;

(e) error in permitting Dr. Hurt, plaintiff's witness, to relate, as part of the history given by claimant, the occasion and instrumentality causing alleged disability; (f) plaintiff's counsel, in cross-examining defense witness, Dr. Franklin, should have confined his hypothetical questions to the specific injuries pled and relied upon; (g) error in forbidding witness Dr. Hurt, upon request by appellant's counsel on cross-examination, to illustrate to the jury the position he assumed the plaintiff to have been in when injured; (h) the court should not have sustained objections to defense argument in instances (two) hereinafter shown.

Mr. Fryer, furniture owner, testified to watching the two men move the chifforobe down a steep stairway; that his attention was drawn to a noise of grunting and stumbling of feet, thinking to himself that they were in trouble, of seeing another man run over to help them. Plaintiff's only medical witness was Dr. George Hurt, whose observation and treatment of such patient began the latter part of June 1940. He diagnosed the injury sustained by Hale the preceding February as a rupture of the nucleus pulposus (the seed-like center of cartilaginous disc between the fifth lumbar vertebra and the sacrum), extrusion of said nucleus into neural opening or spinal canal, and consequent narrowing of intervertebra and the sacrum), extrusion of said nucleus into the neural opening or spinal his lower back downwards. Answering a hypothetical question by counsel, this witness pronounced the disability in question as total and permanent, for which condition the February accident was responsible; maintaining such opinion through exhaustive cross-examination.

On the other hand, defense medical testimony flatly challenged above diagnosis, and was to the effect that the injuries pictured by Dr. Hurt would have resulted in immediate immobilization and partial paralysis of the patient; in short, "a litter case"; generally describing plaintiff's disorders as a likely result of the pre-existing toxic condition of prostate, lungs and kidneys. It was the unanimous opinion of these well-qualified witnesses upon lengthy examination that there was no evidence of constricted intervertebral spacing between sacrum and fifth lumbar, or of a ruptured disc, such as would produce nerve pressure; and that plaintiff's history of continued manual labor after the alleged

accident conclusively refuted same. However, in passing upon appellant's propositions arguing no evidence or insufficiency thereof to raise issues of total and permanent disability, we are required to discard all adverse or contradictory testimony and give credence to record facts most favorable to the successful party. From such viewpoint, whether or not plaintiff sustained accidental injury on February 9, 1940, was presented by his narrative alone, the extent and duration thereof being the jury question.

Pertinent to these findings of maximum disability, Hale testified that from the date just named he had not been free of back pains; similarly as to legs, with areas of numbness; that his grasp was infirm; that he had difficulty in bending over; had to be careful in walking to avoid jolting body; wearing a back brace since June 1940. For some four years plaintiff had been under observation and treatment of Dr. Hurt, whose testimony directly contradicted that of many eminent physicians. Even so, his opinion was of probative value on the primary issues under discussion. An appellate problem quite analogous was presented in Texas Employers' Ins. Ass'n v. Clark, Tex.Civ.App., 23 S.W.2d 405, 410, and correctly answered, we think, by Chief Judge Hickman while on the Eastland Court, in the following statement: "By various propositions it is contended that the several answers of the jury to the issues submitted were so against the great weight and overwhelming preponderance of the evidence as to be clearly wrong. We have given careful consideration to these propositions, but our conclusion is that the record presented to us is not one justifying the exercise by us of our power to disturb the fact findings of the jury. Many physicians of well-known ability and standing testified as witnesses for appellant that, in their opinion, appellee's paralysis did not result from the blows described by him, but the record also contains the testimony of a physician who testified as a witness for appellee whose opinion differed from that of appellant's witnesses. This presented a fact issue. However much we might be impressed by the evidence of the physicians who testified for appellant, we cannot say that their opinion was clearly right and the contrary opinion of the physician testifying for appellee was clearly wrong. That is a question of credibility and weight, of which we are not to judge. * * * The question of whether the blows received by appellee brought about his paralyzed condition was a fact issue for the jury's determination, and in arriving at a conclusion upon that issue the jury was not limited to expert opinions. It clearly could accept the opinion of one expert rather than the contrary opinion of many experts. To hold otherwise would be tantamount to a holding that a jury's verdict, in order to be upheld, must be in favor of the party offering the greater number of expert witnesses to testify to his contention."

In the same connection appellant urges error in the court's refusal to grant peremptory instruction because of following additional fact situation: On April 25, 1940, plaintiff had gone to the office of Dr. Franklin for a thumb injury sustained in course of employment. This doctor testified that Hale gave no history of any other trouble and had no appearance of one suffering from a back injury. Later, upon oral deposition in the present case, referring to the Dr. Franklin visit, he testified: "Q. You were in perfect health except for your thumb? A. Yes, sir. Q. And you had your alleged injury on February 9, 1940? A. Yes, sir." Hale admitted above statement on subsequent trial; explaining same as having been mistakenly made without full understanding concerning the matters under inquiry. The rule sought to be here invoked is that "Admissions made by a party while testifying as a witness are conclusive at the trial during which the testimony is given." 17 Tex. Jur., par. 240, p. 576.

This principle is deemed inapplicable, considering plaintiff's testimony as a whole. The so-called admission was subject to explanation thereof made by him at the trial, Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 145 S.W.2d 569; following which it became the jury's province to weigh the conflicts and reconcile them. Wigmore, Evidence, 4th Ed., Sec. 1059, refers to such testimony as "quasi admissions" in contrast to judicial admissions or those arising by estoppel; and, "being nothing but an item of evidence, is therefore not in any sense final or conclusive. The opponent, whose utterance it is, may none the less proceed with his proof in denial of its correctness; it is merely an inconsistency which discredits, in a greater or less degree, his present claim and his other evidence." See also Annotation 50 A.L.R. 979, on "Right of party to have case submitted to jury when his own testi-

mony negatives his right of action or defense."

■ An introductory sentence of the court's charge reads: "Your answers should reflect only your conclusions of fact honestly arrived at from a preponderance of the evidence before you." Each of the issues thereafter submitted carried its own burden of proof. Appellant submits that the above general instruction is erroneous because the jury is there told that a negative answer to issues must be made from a preponderance of the evidence. Opposed to appellant's contention are numerous decisions to the effect that where, as here, each issue has been so framed as to clearly indicate its own burden of proof, the jury could not be misled or confused by the quoted preliminary instruction; and the error thus complained of is considered harmless. Miller v. Wyrick, Tex. Civ.App., 96 S.W.2d 253; McFadden Publications, Inc. v. Wilson, Tex.Civ.App., 121 S.W.2d 430, writ refused; Brown Express, Inc. v. Henderson, Tex.Civ.App., 142 S.W. 2d 585.

The trial court is further charged with error in holding inadmissible two X-ray pictures offered in connection with testimony of defense witness, Dr. Holtz. Previously Dr. Hurt, with X-ray pictures of plaintiff's back in evidence, had testified to a displacement downward of the fifth lumbar vertebra and a restriction of the neural (nerve) opening between the named vertebra and sacrum, due to a ruptured disc. Dr. Holtz had already stated that his examination of plaintiff indicated herniations of the nuclei in the upper or thoracic region, but as regards the fifth lumbar and sacrum, there was no narrowing, or wedging, pronouncing claimant's back normal in all respects; testifying (and the fact appears undisputed in the record) that intervertebral spacing in a normal back varied from one individual to another. In course of direct examination, Dr. Holtz was asked about other X-ray films that would serve to illustrate the varying degree of spacing between the fifth lumbar and sacrum in different individuals; whereupon the evidence in question was offered consisting of X-ray back pictures of Messrs. Logan Ford and Mack Taylor, defense counsel. Upon objection, the court excluded Exhibits 33 (Ford) and 34 (Taylor), and defendant's bill of exception discloses the full testimony of Dr. Holtz relative thereto. The picture of Mr. Taylor, he said, showed larger

neural openings and intervertebral spaces than did similar films of either plaintiff or Mr. Ford; while the latter's back (Exhibit 33) indicated a smaller margin of spacing, openings and wedging than was shown in Exhibit 11 (of Hale); and that the rejected Exhibits represented the variation of spacing in normal human vertebrae unassociated with accident or pain. Said pictures were then tendered in evidence "for the sole and limited purpose of illustrating the range in the spacing, the opening, and in the wedging in the * * * fifth lumbar vertebra region * * * of a normal back." Plaintiff's objections thereto, sustained by the court, pointed to no agreement that such films depicted a normal back; and to the age disparity of defense counsel as compared to plaintiff, the evidence being merely cumulative at most.

■■ Similar X-ray portrayals of the human structure (third persons), introduced for purpose of comparison or illustration, have been uniformly held relevant. Chicago, R. I. & G. Ry. Co. v. Smith, Tex.Civ.App., 197 S.W. 614, affirmed Tex.Com.App., 222 S.W. 1099; McGrath v. Fash, 244 Mass. 327, 139 N.E. 303; Norland v. Peterson, 169 Wash. 380, 13 P.2d 483, 484; Virginian Ry. Co. v. Bell, 118 Va. 492, 87 S.E. 570; 3 Wigmore, Evidence, 3rd Ed., p. 194. And though proper subject matter for jury consideration here, the court's adverse ruling thereon is not seen as error to the prejudice of defendant. A measure of discretion rested in the trial judge, we think, under the circumstances of defendant's tender (1) as to whether the exhibits were of practical instruction to the jury, considering the degenerative changes pointed to by Drs. Herndon and Holtz in the back structure of plaintiff, a much older man, and (2) the tendency thereof toward a collateral field of inquiry; for said proffers were not accepted by plaintiff as illustrative of normal backs. Aside from the foregoing, the rejected evidence was simply a visual demonstration of an admitted fact, i. e., the dissimilarity of intervertebral spacing in different individuals, a fact reiterated in defensive testimony and not denied. Drs. Holtz and Herndon had so testified, and although the particular ruling is not free from doubt, we hold no reversible error is shown in the exclusion of pictures demonstrating that such statements on their part were true. See St.Louis & S. F. Ry. Co. v.

904

Matlock, Tex.Civ.App., 141 S.W. 1067; La-Grange & Lockhart Comp. Co. v. Hart, Tex.Civ.App., 169 S.W. 373; and McGraw v. G., H. & S. A. Ry. Co., Tex.Civ.App., 182 S.W. 417, as authorities in point.

▮▮▮▮▮ Appellant adduced testimony in support of its defense that plaintiff's injuries were due to physical infirmities wholly unassociated with the 1940 accident; and next assigns error in that the court failed to instruct the jury, in connection with issues 1 to 4, that the results of other infirmities in evidence, viz., prostate and kidney trouble, etc., should not be included in their estimate of plaintiff's disability. Defendant requested no instruction to such effect, however, simply detailing the evidence relating to plaintiff's other disabilities in its objections to the issues that "same does not limit the inquiry to a consideration of the injuries pled." Rule 279 in part provides: "Failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment." Said objections related to defensive matters that might well have been included in the charge, if called to the court's attention by requested instruction; but a tender of the defense by way of explanatory instruction is now held a necessary predicate to appellate complaint. Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312; Russell Const. Co. v. Ponder, Tex.Civ.App., 182 S.W.2d 857, affirmed by Sup.Ct., 186 S.W.2d 233.

▮▮▮▮▮ The court overruled defense objections to the following question propounded by plaintiff during examination of Dr. Hurt: "Now Doctor, did you get the history of his case when you examined him? A. Yes, sir." However, the interrogatory was not pressed, the next question involving another matter to which no specific objection was made; under which state of the record we find no basis for appellant's eighth point of error. Likewise the further point is made that upon defendant's request, Dr. Hurt should have been required to demonstrate the accident to the plaintiff as he understood it. We see no merit in the proposition, the witness having first stated that he was unable to do so, giving reasons, the court at the same time according counsel the right to elicit from witness in words the information desired by way of ocular demonstration.

▮▮▮▮▮ The court sustained an objection (Bill No. 3) to the following jury argument by defense attorney, Mr. Ford: "Isn't it strange that the only doctor in Dallas that would come down here and testify to such condition (referring to plaintiff), is Dr. George Hurt?" Dr. Shaulk had been in attendance at the trial as a witness for plaintiff, but before being used was reported abed with a respiratory infection; under which state of the record, no error prejudicial to defendant is disclosed. Similarly under bill of exception 4, a statement of Mr. Ford in argument was stricken as not sustained by the record. We think the ruling tended to unduly limit the latitude of argument, as counsel was correctly restating the full effect of particular testimony, though not in exact language of Dr. Hurt; and it may be that the restriction was needlessly imposed. However, the ruling bore only remotely upon the jury issues and is not viewed as "such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment"; Rule 434.

We conclude, after careful study, that appellant's points herein discussed and presented, should be overruled, with resulting affirmance of the judgment under review.

Affirmed.

### On Rehearing.

We will briefly discuss appellant's point 9 (overlooked in original opinion), urging error in that the court should have confined the latitude of Dr. Franklin's cross-examination to the particular injury plead and relied on as causing disability; of which the following question by plaintiff's counsel was illustrative: "Q. Now, isn't it true that recognized medical authorities, medical authority recognizes that people with some degree, I am not saying just how bad a rupture they have, but in some cases they continue to work after they receive an injury known as a rupture of the nucleus pulposus?" To this interrogatory the witness gave affirmative answer, over defense objection that the inquiry should be confined to a ruptured nucleus pulposus between fifth lumbar vertebra and sacrum whereby a jelly-like content had been forced back into the neural opening or spinal canal. In the same connection all medical witnesses (including Dr. Hurt) testified to herniations in upper or thoracic vertebra of Hale, probably of developmental origin, which were the sources of no pain

or claim of disability. Appellant argues that above unrelated herniations together with answers thus elicited from Dr. Franklin, not limiting the cross-examination to the locale and alleged severity of plaintiff's injury, tended greatly to mislead and confuse the jury.

In Grocers Supply Co. **v.** Stuckey, Tex.Civ.App., 152 S.W.2d 911, (Syl. 4), is stated the applicable rule that "A cross-examiner is allowed a liberal range touching all matters testified to in chief by an expert witness, and the scope of the examination rests largely within the trial court's discretion"; see also 32 C.J.S., Evidence, § 560, pp. 369, 370. Furthermore, a reading of Dr. Franklin's testimony discloses no misleading trend of evidence as a result of the general cross-examination complained of. This witness had consistently answered that disability following a ruptured disc would depend upon location thereof and degree of spinal pressure; but that any intervertebral rupture at fifth lumbar and sacrum, of the severity described by Dr. Hurt, would be immediately attended by excruciating pain and complete bodily disablement. The point is overruled, together with motion for rehearing and written argument in support. Upon recheck of record testimony, the related matter in original opinion, page 5, beginning "To an extent corroborative of Dr. Hurt, were statements of Dr. Franklin," is withdrawn.