### WESTERN UNION TELEGRAPH CO. v. COKER.
### No. 13755.

Court of Civil Appeals of Texas. Dallas.
Feb. 14, 1947.

Rehearing Denied March 28, 1947.

Francis R. Stark, of New York City, and
Wm. H. Flippen and John W. Miller, both
of Dallas, for appellant.

Carden & Hemphill, of Dallas, for appellee.

YOUNG, Justice.

Floyd Coker brought suit for personal injuries sustained while working for defendant and on its premises. His petition alleged damages in the sum of $2,975; the jury verdict being for $2,000 which the trial court reduced on motion for new trial to $1,250, and judgment was rendered for the lesser amount. This appeal was duly perfected by the company, appellee saving an exception to the required remittitur.

Coker had been employed as a carpenter to rearrange vestibule space in the company shop on Camp Street, Dallas; claiming that while engaged in removing a 4x4 wooden plate (consisting of two 2x4's nailed together) about 5 feet long, located at top of a wall some 8 feet from the floor, said beam with protruding nails fell, striking him on right leg and inside of ankle, causing various complications and disabilities. The negligence charged against appellant was in not furnishing a helper to aid in performing such operation; in furnishing an old, unsteady and rickety ladder, also in supplying him with an oversize wrecking bar, too long and heavy. Fact issues as to ladder and bar were eliminated by the court and the jury answers may be summarized, viz.: (1) That plaintiff Coker on or about June 28, 1944, received physical injury to his leg at Western Union Building on Camp Street; (2) that the safety of plaintiff in performing the work under the circumstances reasonably required the services of at least two men; (3) defendant failed to exercise ordinary care to furnish another person along with plaintiff in the work of dismantling in question; (4) which was a proximate cause of injury; (5) the jury damages were fixed at $2,000 as already shown.

It is appellant's position that Coker was not injured as claimed; asserting further in introductory part of brief that "This appeal is predicated largely upon the theory that plaintiff committed fraud upon the Court and this defendant." The company's three points of appeal are lengthy, each embracing a résumé of applicable testimony; their substance, however, being presented in closing paragraphs of the brief, viz.: (1) Plaintiff's testimony to the effect that he was doing a one-man job and that he had not waited for help because he "worked for the money," amounting at the most to only surmise and suspicion of the facts to be proved in establishing a case of actionable negligence (failure to furnish a helper), making it the trial court's duty to peremptorily instruct a verdict for defendant; (2) plaintiff's testimony on its face constituted perjury and fraud; being at the most mere surmise or suspicion of the facts sought to be proved, rendering it the duty of the court to direct a verdict for defendant; and such failure on part of the court was not corrected by the required remittitur; (3) the disclosures of newly discovered evidence (Exhibits A, B, C and D in motion for new trial) clearly show perjury and fraud in the testimony of plaintiff that would have changed the jury verdict and was sufficient ground for a reopening of the case.

Coker, 71 years of age at time of trial, had been employed by defendant to dismantle said vestibule wall; and, when allegedly injured, was engaged in prying loose the 4x4 plate from top of studding. He was standing on a stepladder, holding the timber with left hand, crowbar in right, when, as he testified, "it jiggled to one side and it got away from me and fell and hit me on the inside of the ankle;" stating that earlier in the work he had been assisted by another employe who had gone to some other job. While the wall was being torn down, other employes of a different department were working at adjacent desks. Two expert witnesses on behalf of plaintiff said that the carrying through of such work required assistance, as indicated by the answer of Mr. Ewing to the following question: "Do you say that job is extra dangerous and hazardous for one man to be there taking that down piece by piece? A. If there are people working in the office, it would be dangerous to them and certainly to him, if he is on a stepladder." Plaintiff described his hold on the plate as "about the center, I let it fall *accidentally;*" further upon cross-examination testifying:

"Q. As I understand your testimony you had already knocked off the sheetrock from the partition wall? A. Yes, and taken the studding out.

"Q. You did that by yourself? A. Yes, sir.

"Q. *It was a one-man job that you were doing?* A. *One could do it easily.*

"Q. It was only five feet long and eight feet high? A. Yes, sir.

"Q. Did you ask for· a man to help you? A. My foreman was not there.

"Q. You voluntarily did the work that they hired you to do? A. I went under instructions of the foreman to take that stuff down.

"Q. Why didn't you say, 'Give me another man'? A. I thought he would be there all the time, but he left.

"Q. Why didn't you wait until he got back? A. I worked for the money."

Appellant seizes upon the above italicized language as admissions on part of Coker precluding any charge of negligence or claim of liability, but in our opinion such is not the necessary effect of the particular testimony. His use of the word "accidentally" is not conclusive as an admission against interest. Texas Employers Ins. Ass'n v. Hale, Tex.Civ.App., 188 S.W.2d 899, Syl. 4, affirmed 191 S.W.2d 472; and the jury could as readily have inferred that the statement about it being a one-man job was with reference to the prior work of taking down sheetrock and studding. ·Clearly the evidence adduced by plaintiff raised issues of negligence on part of the master, whose duty it was "to exercise ordinary care to employ a staff of servants sufficiently large to perform the work with reasonable safety to themselves. He is bound to see that the number of servants engaged upon the work in hand remains sufficient to insure the reasonable safety of each of them. This principle affects him with liability not only where he allows the force of employes, considered as a whole, to fall below the proper aggregate, but also where he fails to assign an adequate number of men to each· particular piece of work which may be undertaken from time to time." Bonn v. Galveston,

H. & S. A. Ry. Co., Tex.Civ.App., 82 S.W. 808, 812 (citing authorities); Galveston, H. & S. A. R. Co. v. Brown, Tex.Civ. App., 181 S.W. 238, writ ref.; 29 T.J. p. 166.

■ According to plaintiff, the falling timber with open nails scratched and bruised his right ankle about shoe top, he immediately going· to O'Neal and Woodall, employes in the same office, for something to put on the spot, securing mercurochrome. The occurrence was about 4:30, quitting time; testifying that he went home, told his wife about it, she applying hot packs and Epsom salts; witness working for several days thereafter, having to stop and go to Dr. Stone for treatment; that a sore developed on bruised area as big as his hand, along with swelling and leg pains, until he could hardly walk; place clearing up at times but breaking out again; that on account of the recurrent ailment he has since been unable to work, except two days for L. D. Decker in December 1944; never having had trouble with leg before.

The facts which deprived Coker's testimony of any probative force, under defendant's theory, were elicited from plaintiff on exhaustive cross-examination. He had reiterated to counsel that his right leg had never troubled him before, with no medical treatment for it or with reference to either ankle prior to June 1944. Upon being confronted with his oral deposition taken in 1942 in case styled Floyd Coker v. Lumbermen's Mutual Casualty Co., Federal Court, Wichita Falls, he swore that in the named suit the injuries were to bottoms of feet (presumably athlete's foot) and a rupture about which he had forgotten in earlier questioning. In said Federal Court deposition Coker had sworn that on August 12, 1941, he was working for the McKee Construction Company, and, in attempting to cross a ditch, had slipped down, feet going into water, where briars or some sharp substance had scratched his ankles about shoe top, drawing blood, ankles commencing to itch and swell, later extending to· knees; that he had secured first aid and medical attention, thinking the trouble was skin poisoning for which the same Dr. Stone had treated him over a period of weeks; not being able to walk until Sep-

tember 30, 1941. This previous suit was settled for $1,500. Before being questioned about the 1941 claim, plaintiff had answered that Dr. Stone (as he recalled) had treated him for no other injury except that claimed in the instant suit.

The company physician, Dr. Thompson, first examined plaintiff's leg in October 1944 and later at time of trial (February 1945) in connection with his testimony. He testified that on first inspection plaintiff's legs were discolored, indicating old varicose veins and recurrent·ulcers caused by faulty circulation; and a condition that had developed long before June 1944; any slight blow or bruise producing the precise ailment complained of by plaintiff. Without our further detail of facts, defendant groups other testimony of plaintiff demonstrative of the fact that both accidents were of the same pattern and in support of its contention that the later claim of injury, at least, was spurious, viz.; (1) In each instance the trouble would clear up and then recur; (2) the telling by plaintiff of different stories to company employes as to how the accident occurred; (3) in not reporting the injury and continuing to work; (4) no witnesses in either case; (5) a little blood each time from wound just above shoe top.

We are here dealing with an injury allegedly sustained through negligence of defendant employer, in which connection the fact of injury is shown to bear some measure of corroboration. Dr. Stone in his examination of July 1944, described plaintiff's trouble as a "traumatic ulcer," intimating that same was due to a wound or injury. Plaintiff's wife likewise described the place on plaintiff's leg as a "small hole about the size of the end of a pencil or larger; it looked like it might have been gouged"; and that there were no discolorations on leg "before he got hurt." She was not cross-examined. The two employes to whom Coker had applied for mercurochrome on June 28 were reportedly in attendance at the trial, but did not testify.

Obviously, and notwithstanding plaintiff's own inconsistencies and contradictions, involving generally the prior Federal Court proceedings, his claim of subsequent injury to leg has support in testimony amounting to more than surmise and suspicion. Upon appeal, all reasonable intendments will be indulged in support of the verdict or jury findings, considering the evidence and inferences properly to be drawn therefrom in the light most favorable to the prevailing party; accepting as true that testimony which tends to support the verdict. 3 T.J., pp. 1057, 1058, sec. 745. The stated rule is also applicable to the extent of injury, Dr. Stone testifying that evidently an infection followed the blow of June 28, with the result of recurrent ulcers; which condition had affected plaintiff's ability to perform manual labor at least 50 percent.

■ A record assailed as reflecting fraud and perjury will be carefully examined in that regard (Appellant having expressly exonerated counsel for appellee from any connection therewith). Without doubt, plaintiff's testimony in many respects is highly contradictory, but not beyond reconciliation by the jury as the arbiter of all disputed facts. "Once the witness is determined by the judge to be qualified to speak, the belief of the jury in his utterances rests solely with themselves." Wigmore, Evidence, Third Ed., sec. 1010. And, discussing a like situation in Texas Motor Coaches v. McKinney, Tex.Civ.App., 186 S.W.2d 714, 718, it was observed: "We are fully aware that plaintiff is characterized by defendant's counsel as a 'professional claimant,' with a background of claims against various concerns for other injuries; and the many changes and alterations in her oral deposition are pointed to as proof of a deliberate attempt to bolster an otherwise trivial injury. These matters were fully developed in cross-examination; and, withal, did not deprive her testimony of all probative force, it being the jury's exclusive province to assess the weight and value thereof."

■ In the same connection, from a full consideration of this record, we are convinced that the trial court was within its discretion in requiring the $750 remittitur on the sole ground of excessiveness of verdict; Texas Rules of Civil Procedure, rule 328. In other words, had the judgment under review been in amount of the original

jury verdict ($2,000), we would have required a like reduction. Rule 440.

 Attached to defendant's motion for new trial were the following Exhibits suggestive of newly discovered evidence: (1) Affidavit of L. D. Decker to effect that plaintiff had worked two days at affiant's residence, December 5 and 6, 1944, and did not appear to be suffering from physical injury; (2) sworn statement signed by Coker to C. C. Schuchard in October 1941, the purport of which was to flatly contradict the testimony on present trial that his claim in the Wichita Falls case was for athlete's foot and hernia; (3) affidavit of manager, R. E. McKee Company, showing that employment payments to plaintiff during 1941 were $752.-64 instead of $1,180 as testified by Coker; (4) application made by plaintiff to Texas Unemployment Compensation Commission, styled "Initial Claim for Benefits" dated January 4, 1945, signed with full knowledge that the law provides a penalty for false statements, reciting that applicant was registering for work, was available and "able to work;" also "Notice of determination" by the same agency, dated January 11, 1945, disapproving claim with the notation "Benefits have been exhausted for the benefit year ending March 30, 1945."

Even assuming a materiality to the statements made in Exhibits A and C (affidavit of L. D. Decker and of plaintiff to Schuchard in 1941), the record discloses that appellant had notice of such testimony before the trial. The oral deposition of plaintiff had been taken prior thereto, where the fact of his two days employment with Decker (a Western Union employe) had been brought out, the proffered Exhibit fixing only the date; and the sworn statement to Schuchard was referred to by plaintiff several times in the Federal Court deposition of which appellant's counsel also had antecedent knowledge. The R. E. McKee affidavit was entirely collateral to any controlling issue here; and while aforesaid records of the Unemployment Compensation Commission would have tended to impeach Coker as indicating that certain testimony given by him on the trial (inability to work at all after the Decker job) was untrue, the documentary statement, at most, was but the opinion of claimant concerning capacity to work, whether full or partial, as related to unemployment benefits; being made at a time when the major losses involved in his cause of action ($10 per day carpenter scale, pain, suffering and necessary expenses) had already accrued. "New trials are rarely granted for the discovery of new evidence which tends merely to impeach or contradict witnesses who have testified at the trial * * *." 31 T.J., p. 113, sec. 100. And motions for new trial upon ground of newly discovered evidence are always addressed to the sound discretion of the trial court. 31 T.J., p. 91, sec. 82, no abuse thereof being established in the instant case.

We conclude that the points of error under consideration are without merit, and likewise as to appellee's cross assignment complaining of remittitur; with the result that plaintiff's judgment in amount of $1,-250 is affirmed.*

BOND, Chief Justice (dissenting on rehearing).

The factual background of this appeal is reasonably stated in the majority's opinion. However it will be seen that the jury's verdict is a friend and refuge. The testimony as to whether the defendant or its agents, servants and employes failed to use ordinary care with respect to any duty to furnish an assistant or helper to plaintiff while dismantling the partition wall, is so weak as to raise merely a surmise or suspicion of the facts necessary to be proved in order to establish liability against the defendant. The judiciary should recognize the weakness and determine the issues accordingly. Indeed, the trial by jury is sacred and should be preserved. However, the jury system is not perfect, evidenced by statutes authorizing courts to set aside

---

* Under Art. 8306 et seq., Workmen's Compensation Law, nonsubscribing employers are deprived of common law defenses, such as assumed risk, contributory negligence, etc.; the burden of an injured employee being limited generally to establishment of negligence on part of such employer and resulting damages.

verdicts where it manifestly appears that such verdicts were due to passion or prejudice, etc. Whenever the rights of the public, the government and private citizens are seriously injured as the result of a jury verdict, it is the clear duty of the courts, upon proper motion, to review and consider the evidence for the purpose of determining if the jury fulfilled its duty in weighing the evidence and deciding the issues. As said in the case of Galveston, H. & S. A. Ry. Co. v. Thompson, Tex.Civ. App., 116 S.W. 106, 108 (writ refused):

"If this were not so, then, under the mask of law, the law might be ignored and the citizen deprived of his life, liberty, or property, not by due process of law, but by the fraud, misconduct, undue influence, whims, prejudices, ignorance, or caprice of the jury; and courts, instead of being places where justice is juridically administered, become places where justice is mocked, scorned, trampled down, and buried in a mire of prejudice and corruption, and the very purpose and object of the judicial department of government thwarted and made the medium of robbing, oppressing, and plundering the people who are taxed to support and maintain it."

Then, too, in the case of Wichita Falls Traction Co. v. Cook, 122 Tex. 446, 60 S.W. 2d 764, at page 768, the Commission of Appeals relates:

"If the court thinks that the ends of justice have not been attained by the verdict of the jury, it is clearly its duty to set aside the judgment rendered on the verdict."

And in the case of Texas & P. R. Co. v. Casey, 52 Tex. 112, at page 122, our Supreme Court said:

" * * * that the right to a new trial in a proper case is a valuable one given by law, and should be fearlessly enforced by presiding judges, as otherwise the ends of justice may often not be attained."

See also McMurray v. McMurray, 67 Tex. 665, 4 S.W. 357; Casey v. Jones, Tex. Civ.App., 189 S.W.2d 515.

So it is that no opinion should be entered by any court in any case inspired by rules of expediency or for any personal or political fortune as to appease lawyers, judges or litigants at the expense of honest conviction. This case rests not on statutory liability, but on the common law of negligence between Masters and Servants.

Visualizing this case: A small partition wall, 5 feet wide, 8 feet high, constructed of sheet rock wall-board nailed to 2 x 4 studding, with 2 x 4's doubled for a plate 5 feet long at the top of the wall. The plaintiff was an experienced carpenter, 71 years of age, strong and healthy, drawing standard union wages. The plaintiff was employed by the defendant to dismantle this wall and extend it back to give additional room for vestibule entrance in the building. Plaintiff, with another workman or helper, took the wall-boards off and moved the studding, leaving each end of the plate attached to the side-walls. Sometime during the work, the other employe left the job, for what reason the record does not show. The plaintiff then went to another room or workshop, located in the same building, without the knowledge or consent of the defendant or its employes, and secured a ladder and crow-bar to remove the five-foot plate. Plaintiff, after putting the ladder in place, climbed to the first, second or third rung, loosened the left end of the plate and, while prizing loose the right end from its fastening and holding to the plate with his left hand, he "accidentally" let the plate fall, resulting, as he claims, in injury to his leg.

Now, bearing in mind that the judgment is based solely on the findings of the jury (1) that the safety of plaintiff in performing the work under the circumstances reasonably required the services of at least two men; and (2) that defendant failed to exercise ordinary care to furnish another person along with plaintiff in the work of dismantling the wall, the court should review plaintiff's testimony, and, if his admission given at the trial of this case precludes a charge of negligence or claim of liability, the verdict of the jury should not be a refuge for an unjust decision.

At the trial plaintiff testified, in response to questions:

"Q. As I understand your testimony you had already knocked off the sheetrock from

the partition wall? A. Yes, and taken the studding out.

"Q. You did that by yourself? A. Yes, sir.

"Q. It was a one-man job that you were doing? A. One could do it easily.

"Q. It was only five feet long and eight feet high? A. Yes, sir.

"Q. Did you ask for a man to help you? A. My foreman was not there.

"Q. You voluntarily did the work that they hired you to do? A. I went under the instructions of the foreman to take that stuff down.

"Q. Why didn't you say 'Give me another man'? A. I thought he would be there all the time, but he left.

"Q. Why didn't you wait until he got back? A. I worked for the money.

"Q. Which end did you have in your hand of the plate? A. About the center, I let it fall accidentally."

It is pertinent here to recall that the plaintiff filed suit alleging three acts of negligence on the part of the defendant: (a) In failing to have a helper; (b) in furnishing an old worn out, unsteady, shaky and rickety ladder; (c) in furnishing an over size wrecking bar, too large and too heavy: On the first issue, admitted by plaintiff himself, the plate "accidentally" fell from his hand; and the work at hand was a one man job—"one could do it easily." And then, on the last two issues pleaded: First, with respect to the old, worn out, rickety ladder claim, plaintiff testified:

"Q. I believe you said it was a good ladder to go up and down on? A. Yes, it was a good ladder."

And second, with respect to the over-size, heavy, wrecking bar claim, plaintiff testified:

"Q. Held in your hand, do you judge that weighs about five pounds? A. Six or seven pounds.

"Q. If it weighs five pounds, you could be mistaken? A. Five or six or seven pounds, along there."

At the conclusion of the testimony, the trial court held that the plaintiff having testified that the ladder "was a good ladder,"

and the wrecking bar weighed "five or six or seven pounds, along there," such statements, as a matter of law, were admissions which precluded a charge of negligence or claim of liability for defendant's failure to furnish a good ladder or suitable wrecking bar. Then, for like reason, plaintiff's statement that the work of dismantling the wall was a "one man job—one could do it easily," and that the plate "accidentally" fell from his hand should likewise avoid liability for defendant's failure to furnish a. helper to remove the plate. Plaintiff's testimony that he was doing a one-man job which one could do "easily," and that he did not wait for help because he "worked for the money," constituted, at the most, surmise and suspicion of the facts to be proved by. plaintiff in order to establish a case of actionable negligence.

In the light of this record, it was the duty of the trial court to have instructed the jury to return a verdict for the defendant; and on the failure to do so, it becomes the duty of this court to render such judgment as the trial court should have rendered. The plaintiff being an experienced carpenter, knowing the line of work he was doing and the danger, if any, incident to the work, assumed the risk. "Knowledge of the risks is charged to an experienced servant as a matter of law, and where the particular task involves no greater risk than that run by anyone who works at an occupation of the kind in question, the servant, whether experienced or not, assumes the risk, unless he has been set at a task outside his usual line of work and the danger is unknown to him. As against an adult, at least, the master is entitled to assume that the servant is acquainted with all ordinary risks, and in the absence of actual knowledge that the danger is abnormal or that the servant. is inexperienced and ignorant of some ordinary danger, he is under no duty of warning as to adults." 29 T.J. 52, sec. 28. In the instant case, the facts and circumstances permit of but one conclusion, that the question of assumed risk becomes one of law for the determination of the court. There is no room to conclude and no reason shown, that the defendant, its agents and servants, should, or could have anticipated that plaintiff

would have "accidentally" hurt himself, or that the work plaintiff was doing required the services of two workmen. Being convinced that plaintiff's suit is untenable, that his testimony is prima facie unbelievable, I respectfully dissent from the majority; this cause should be reversed and rendered. There is no room for a compromise judgment by reducing the amount of $2,000, as found by the jury, to $1,250. Such reduction by the trial court without assigning cause or reasons infers the weakness of plaintiff's testimony and a miscarriage of justice. The testimony of plaintiff gives rise to no testimony of probative value, consequently defendant's motion for a peremptory instruction, or motion for judgment notwithstanding the verdict, or motion for new trial should have been granted. It is well settled that more than a scintilla of evidence is necessary to raise a fact issue for a jury. The leading case in Texas upon this point is Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063, in which Mr. Justice Denman, speaking for the Supreme Court, said:

"From a careful examination of the cases, it appears (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines, the law presumes that the jury could not 'reasonably infer the existence of the alleged fact,' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony establishes more."